701 So.2d 937 (1997)
STATE of Louisiana Through the DIVISION OF ADMINISTRATION
v.
McINNIS BROTHERS CONSTRUCTION.
No. 97-CC-0742.
Supreme Court of Louisiana.
October 21, 1997.
Rehearing Denied December 12, 1997.
*938 Milton C. Roberts, Jr., Mayer, Smith & Roberts, Shreveport, for Applicant.
Pamela M. Perkins, Baton Rouge, Billy R. Pesnell, Hargove, Pesnell & Wyatt, Shreveport, Larry G. Canada, Galloway, Johnson, Tompkins & Burr, New Orleans, William B. Monk, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, Jason B. Davis, Davis & Flanagan, Shreveport, Edward E. Rundell, Gold, Weems, Burser, Sues & Rundell, Alexandria, Jackson B. Bolinger, Lafayette, Donald J. Armand, Jr., Peter J. Rotolo, III, Shreveport, Blanchard, Walker, O'Quinn & Roberts, Shreveport, Brian D. Smith, Lunn, Irion, Johnson & Salley, Shreveport, for Respondent.
W.P. Wray, Jr., Christopher P. Pierce, Wray & Kracht, Baton Rouge, for La. Associated Gen. Contractors, Inc., Amicus Curiae.
KIMBALL, Justice.[*]
We granted applicants' writ to determine if the time limitation provided in La. R.S. 38:2189for the filing by the State of a suit against a general contractor and a surety on a public works contract is peremptive or prescriptive. Considering the language of *939 the statute, the legislative intent behind the statute, the public policy supporting that intent, we conclude the statute establishes a period of peremption and is therefore not susceptible to suspension by operation of contra non valentem.

FACTS
On June 3, 1982, McInnis Brothers and the State entered into a contract for the construction of the Northwestern State University Nursing Education Center in Shreveport, Louisiana. Pursuant to La. R.S. 38:2216, McInnis Brothers secured a bond from the Great American Insurance Company in part "for the faithful performance" of its duties under the contract. The Center was constructed, and notice of acceptance was recorded by the State in the office of the clerk of court in Caddo Parish on May 9, 1985.
The State alleges that in March of 1991, maintenance personnel at the school noticed that bricks in the exterior walls of the building had begun to move and shift. On July 18, 1994, the State filed suit against McInnis Brothers and Great American Insurance Co. alleging McInnis improperly constructed the exterior of the building, particularly that portion of the construction involving brick wall and window installation, brick ties, brick shelf angles, through-wall flashing and window flashing. McInnis answered the suit, filed third party demands against several subcontractors and their insurers, and filed a peremptory exception of prescription alleging the State's claim was prescribed under La. R.S. 38:2189 which provides a five year time period from notice of acceptance, substantial completion or notice of default of the contractor in which to file suit against the contractor or the surety on the contract or the bond. The State opposed the exception, arguing that under an application of the "discovery rule" of contra non valentem, the five year prescriptive period did not begin to run until discovery of the defects in March of 1991; therefore, the suit filed in July of 1994 was timely.
The trial judge denied the exception of prescription, and the second circuit court of appeal denied defendants' application for a supervisory writ. This court granted defendants' writ application and remanded the matter to the second circuit for briefing, argument and opinion. 96-1822 (La.10/25/96), 681 So.2d 350. Upon remand, the court of appeal issued an opinion affirming the trial court's ruling. 690 So.2d 927 (La.App. 2d Cir.1997). We subsequently granted defendants' writ application to determine whether the time limitation established in La. R.S. 38:2189 is susceptible to suspension by operation of the "discovery rule" of contra non valentem. 97-0742 (La.5/9/97), 693 So.2d 779.

LAW
A person's right to assert a cause of action may be lost with the passage of time by the operation of either prescription or peremption. The Louisiana Civil Code defines peremption as a "period of time fixed by law for the existence of a right." La. C.C. art. 3458. When the peremptive period has run, the cause of action itself is extinguished unless timely exercised. As a result, peremption need not be pleaded and may be supplied by a court at any time. La. C.C. art. 3460. Most significantly, however, peremption may not be renounced, interrupted, or suspended. La. C.C. art. 3461. In contrast, liberative prescription is a period of time fixed by law for the exercise of a right. Article 3447 of the Civil Code defines liberative prescription as a "mode of barring of actions as a result of inaction for a period of time." Thus, while peremption destroys the right itself, prescription merely prevents the enforcement of a right such that a natural obligation remains after prescription has run. Consequently, prescription must be specially pleaded and cannot be supplied by the court, La. C.C. art. 3452 and La. C.C.P. art. 927. Additionally, prescription may be renounced, La. C.C. arts. 3449-51, interrupted, La. C.C. arts. 3462-66, and suspended, La. C.C. arts. 3467-72.
One type of suspension which may apply to a prescriptive period but which, by its very nature, does not apply to a peremptive period, is the doctrine of contra non valentem agere nulla currit praescriptio. In Corsey v. State, through Dept. of Corrections, *940 375 So.2d 1319 (La.1979), this court reiterated the three categories of situations to which contra non valentem had been traditionally applied to suspend the running of liberative prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. Corsey, 375 So.2d at 1321.
In Corsey, this court also formally recognized for the first time, although the seeds of this approach had been sown in earlier cases,[1] a fourth category in which contra non valentem suspends the running of prescription: "Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." Corsey, 375 So.2d at 1322.[2] Application of contra non valentem under these particular circumstances is now commonly known as the "discovery rule." As can be seen from the above discussion, contra non valentem has always been a judicially created equitable doctrine applied to ameliorate the harshness which would result from the strict application of prescription in certain situations.
Although we have not hesitated to apply the doctrine where the circumstances warrant it, we are not unmindful of the role it should play in our law, for, as comment (d) to Article 3467 notes, it should be applied only in "exceptional circumstances." Nor do we fail to recognize the need for certainty in actions fulfilled by and the stabilizing societal effect provided by subjecting claims to prescriptive periods. Consequently, where the particular time limitation at issue reveals a legislative intent to require strict adherence to the particular time period and where that intent is supported by a public interest in having certain claims adjudicated within a limited period of time, the doctrine of contra non valentem is simply not applicable regardless of whether the time limitation possesses the characteristics of a peremptive statute or is merely prescriptive.
Although the Civil Code now recognizes in Articles 3458-61 the previously existing jurisprudentially-created doctrine of peremption, the Code gives no guidance on how to determine whether a particular time limitation is prescriptive or peremptive. Additionally, more often than not, the language used in a particular statutory time limitation does not easily admit on its face of a conclusion as to its prescriptive or peremptive nature. Consequently, this court has resorted to an exploration of the legislative intent and public policy underlying a particular time limitation, for it is primarily whether the legislature intended a particular time period to be prescriptive or peremptive that is the deciding factor in such a case. A review of some of the significant cases in this area reveals certain characteristics a time limitation may possess which this court has found to be relevant in determining whether a time limitation is prescriptive or peremptive.
The series of cases which formed the basis for the formation of the doctrine of peremption in Louisiana began in 1897 and involved interpretation and application of Act 106 of 1892 which allowed for a challenge to the validity of an election provided the action was commenced "within three months after the promulgation of the result of the election contested." The seminal case by this court was Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899 (1900) wherein plaintiffs filed a suit challenging the election almost five years after promulgation of the election results. In response to defendants' argument that their suit was not timely filed under the Act, plaintiffs argued the time limitation was suspended by the pendency of other suits brought by other parties contesting the same election. This court held that the right to contest the election was "lost" after the expiration of the *941 three month time period set forth in the act, noting:
When a statute creates a right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not, properly speaking, one of prescription, but is one of peremption. Statutes of prescription simply bar the remedy. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires the cause of action no longer exists; it is lost.

Guillory, 28 So. at 901.
The idea that a statute is peremptive where it both creates the right of action and stipulates the time within which that right may be executed has been oft repeated since Guillory by the courts of this state and commentators alike. For example, in Succession of Pizzillo, 223 La. 328, 65 So.2d 783 (1953), this court addressed whether Act 46 of 1932 providing that an action to annul any adoption validated by that Act would be "prescribed after the lapse of six months from and after the promulgation of this Act" was peremptive or prescriptive. We held the Act was peremptive, particularly noting that under it, "a right of action of limited duration is created." Pizzillo, 65 So.2d at 786. See also Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 722 (La.1986)(quoting Guillory and then noting that "[o]ther statutes with both characteristics... creation of the right and stipulation of the delay for filing suit ... have also been found to have established peremptive periods.").
Although we have not hesitated to find any statute which both creates or grants a right of action and provides for the time period in which to bring that action to be peremptive, we have also noted that this characteristic need not necessarily be present for us to conclude a statute is peremptive in character. In Guidry v. Theriot, 377 So.2d 319, 325 (La.1979), we stated: "[S]pecification of the time limit for bringing an action in the same statute that created the right of action, is not the sole test of peremption as distinguished from prescription."[3]
In Pounds v. Schori, 377 So.2d 1195 (La. 1979), this court moved its analytical focus away from the Guillory test, and, although the statute at issue in Pounds certainly met that test, instead began to focus on the legislative intent and public policy behind the statute. In Pounds, we reviewed La. C.C. art. 191, which provided that the husband of the mother of a child born during the pendency of the marriage "must" dispute the legitimacy of the child "within six months from the birth of the child" "or within six months after the discovery of the fraud, if the birth of the child was concealed from him; or he shall be barred from making any objection to the legitimacy of such child." We held the time period was peremptive, and thus not interrupted by the filing of a disavowal action in another state, paying close attention to the purposes sought to be achieved under the statute:
We agree that each case of this nature should be considered separately on its merits, bearing in mind that the main consideration is the purpose sought to be achieved by the particular limitation period involved.
The concept that the legal status of a child presumed to be legitimate has, at least by implication, been one of the underlying *942 reasons for our traditional and historical position of zealously guarding and enforcing the presumption created by Article 184, above. Our jurisprudence reflects unwavering dedication to the rule of strict construction of the articles governing disavowal actions. The fundamental end achieved thereby is, of course, preservation of the family unit, the foundation of our society. Further considerations are the stigma of illegitimacy and resultant disinherison attendance [sic] upon a successful disavowal action.
We find the above considerations basis for holding the provisions of Article 191, above, to be peremptive.
Pounds, 377 So.2d at 1199-1200 (emphasis added).
In Guidry v. Theriot, supra, rendered the same day, we stated that,
peremption, as differentiated from prescription, is a matter to be determined by legislative intent revealed by the statute in its entirety, including the purpose sought to be achieved.
We additionally noted in Pounds ... that public policy may also influence the determination of whether a statute is intended to be peremptive rather than prescriptive. We found in Pounds ... impelling reasons of public policy why the statute therein involved should be held peremptive.
See also Hebert, 486 So.2d at 722 ("Another characteristic of a statutorily created peremptive period is the existence of an underlying public interest that a right exist only for a limited period of time."); Metropolitan Erection Co., Inc. v. Landis Constr. Co., Inc., 627 So.2d 144, 147-48 (1993), rehearing denied (La.1994); and Harris v. Estate of Fuller, 532 So.2d 1367, 1370 (La.1988).
The role that the actual language used in a statute plays in our analysis is not quite so consistent or clear as our treatment of the foregoing characteristics. In Pizzillo, supra, we found the statute at issue peremptive even though the statute described the claim as one which would "prescribe" after a certain lapse of time. "While it is true that the Legislature, in providing the time within which suits may be brought, labeled the period as one of prescription, this was inaccurate for, actually, the time provided for the filing of suits was not a period of prescription but one of peremption." Pizzillo, 65 So.2d at 786. Likewise, in Hebert, supra, wherein we held that La. R.S. 9:5628 was a prescription statute, "with only the single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect," we rejected defendant's argument that La. R.S. 9:5628 was a peremptive statute, despite the use of strong language in the statute indicating finality, because "not one case in the jurisprudence considering the distinction between prescription and peremption has accentuated the language used in a given statute as determinative of which was intended." Hebert, 486 So.2d at 724.
On the other hand, however, we have placed some weight on terms which indicate the extinguishment of a cause of action upon the running of a period of time. See, e.g., Guillory, supra, 28 So. at 899-900 (noting that under the statute, action must be taken within three months or the right "is lost"); Burmaster, supra n. 3 (court implicitly held without discussion that statute, which uses term "peremption" in body and title, was peremptive.); and Hebert, supra, 486 So.2d at 724 (court noted that the title to the act which enacted La. R.S. 9:5628 described itself as providing for a "maximum prescriptive period" and that "[w]eight must clearly be given to this statement of the act's object in determining the Legislature's intent in passing this statute."). We conclude that "it is the legislative purpose sought to be achieved by a particular limitation period which has been found to be one of the most significant factors in distinguishing peremption from prescription," Hebert, 486 So.2d at 724, and, although the presence or absence of certain words may be beneficial to a court in its inquiry into the legislature's intent, the use or nonuse of certain words, while relevant, should not be the determinative factor in the analysis.

ANALYSIS
A comprehensive inquiry into whether La. R.S. 38:2189 provides a period which is peremptive *943 or prescriptive requires, at the outset, an understanding of the role the statute plays in the letting of public contracts. The history and development of public works law in our state was succinctly described by this court in Wilkin v. Dev Con Builders, Inc., 561 So.2d 66 (La.1990):
Louisiana has long evidenced an intent to protect those who perform work and supply materials for the construction and repair of buildings and other works. The earliest Louisiana Civil Code granted a privilege on immovables to workmen employed in constructing and repairing buildings or works. La. C.C. art. 75 (1808). Later Codes included suppliers of materials for buildings or improvements in the class of those who were entitled to the rights, and granted them a lien and a privilege on the building or improvement as well as on the lot of ground on which the building or improvement stood.
However, workmen and suppliers engaged by agencies of the state for construction and improvement of public property were not entitled to take advantage of these provisions, or of provisions of later enacted private building contract statutes because liens were not enforceable against public property. Because of the need to protect those performing labor and furnishing materials for public works, the Legislature in 1918 passed Act 224, the precursor to current public works statutes, La. R.S. 38:2241 et seq., granting rights to laborers and materialmen involved in public works. The public contract law did not grant its beneficiaries a lien on the public work itself, but gave them, in effect, "a privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into."....
. . . . .
Public contract law provides that when the representative of a governing authority enters into a contract for construction of a public work, a bond must be provided....
The effect of these provisions is to give certain classes of persons not enjoying privity of contract with the general contractor or with the governing authority a claim nevertheless against the general contractor and his surety and in some instances a claim against the governing authority itself. The provisions also protect the public authority complying with the requirements of the statutes from expenses caused by failure of the contractor to faithfully perform the contract.[4]
Wilkin, 561 So.2d at 70-71 (emphasis added)(footnotes omitted) (citations omitted). Act 224 of 1918 was the source for La. R.S. 38:2241 et seq. Although La. R.S. 38:2241 previously contained the requirement set forth in Act 224 of 1918 that a contractor obtain both a "performance" bond and a "labor and materials payment" bond, the requirement that a "performance" bond be obtained is now located in La. R.S. 38:2216 B. which provides:
When any bid is accepted for the purchase of materials or supplies, the public entity purchasing the materials or supplies may require that a written contract be entered into between the successful bidder and the public entity and further, the public entity may require that the successful bidder shall furnish good and solvent bond in an amount not less than one-half of the amount of the contract, for the faithful performance of his duties. Any such requirements shall be incorporated in the specifications and advertisement.
An action by the public entity against the general contractor on the contract and/or the surety on the bond required by La. R.S. 38:2216 B is subject to the time limitation set *944 forth in La. R.S. 38: 2189, the statute implicated in this case.
It is a long standing principle of statutory interpretation that "[a]s a general rule, lien statutes are stricti juris and should thus be strictly construed." Guichard Drilling Co. v. Alpine Energy Services, Inc., 94-1275 p. 7 (La.7/3/95), 657 So.2d 1307, 1313, rehearing denied (La.1995). "[P]ublic contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes." Wilkin, supra, 561 So.2d at 71. See also American Creosote Works, Inc. v. City of Natchitoches, 182 La. 641, 162 So. 206 (1935); and Rester v. Moody & Stewart, 172 La. 510, 134 So. 690 (1931). "The Public Works Act is sui generis and provides exclusive remedies to parties in public construction work." U.S. Pollution Control, Inc. v. National American Ins. Co., 95-153 p. 4 (La.App. 3d Cir. 8/30/95) 663 So.2d 119, 122.
As explained in Wilkin, supra, La. R.S. 38:2241 et seq. require of the general contractor a statutory bond (the labor and materials payment bond) and give to the qualifying claimant a "privilege against the unexpended fund in the possession of the authorities." Wilkin, 561 So.2d at 70. Similarly, La. R.S. 38:2216 requires of the general contractor a bond "for the faithful performance of his duties." Because it is required by the statute and the parties are not free to enter into the contract without it,[5] the bond is in the nature of a statutory bond which exists for the benefit of the public authority and in essence creates a "privilege" or a source of funds available to the State should it be successful in a suit against the general contractor and the surety under La. R.S. 38:2189. When the surety issues a bond under La. R.S. 38:2216, it does so with the knowledge that under the plain language of La. R.S. 38:2189, a suit against it on the bond can only be filed within 5 years from the substantial completion of the work, from the filing of notice of acceptance, whichever occurs first, or from the notice of default of the contractor. Thus, the extent of the surety's anticipated obligation under the bond is affected by the terms of La. R.S. 38:2189. "The Act is to be strictly construed and the liability of the surety should not be expanded beyond the statute." Metro Builders Hardware, Inc. v. Burko Construction, Inc., et al., 93-1970 (La.App. 4th Cir. 2/25/94), 633 So.2d 838, writ denied, 94-0727 (La.5/6/94), 637 So.2d 1049. "[T]he obligations of a statutory bond are limited to the exact provisions of the statute." Martinolich v. Albert, 143 So.2d 745, 747 (La.App. 1st Cir.1962). Consequently, La. R.S. 38:2189 is one of the statutes in the Public Works Act which should be strictly construed so as to not expand the liability of the surety beyond that set forth explicitly in the statute.[6]
*945 Louisiana R.S. 38:2189, as enacted in 1962 and amended in 1975, provides:
Any action against the contractor on the contract or on the bond, or against the contractor or the surety or both on the bond furnished by the contractor, all in connection with the construction, alteration, or repair of any public works let by the state or any of its agencies, boards or subdivisions shall prescribe 5 years from the substantial completion, as defined in R.S. 38:2241.1, or acceptance of such work, whichever occurs first, or of notice of default of the contractor unless otherwise limited in this Chapter.
This statute "was intended to apply to actions brought by the state (or its agencies, boards, or subdivisions) against the contractor on the contract or its surety in connection with public works `let by the state or any of its agencies.'" Honeywell, Inc. v. Jimmie B. Guinn, Inc., 462 So.2d 145, 148 (La.1985).[7] In State ex rel. Guste v. Simoni, Heck and Associates, 331 So.2d 478, 484 (La.1976), this court observed:
Prior to this 1962 enactment, the prescriptive period of ten years was applicable to contractors upon public works for badness of workmanship and for building defects. La. Civ. Co. Arts. 2762, 3545; see Orleans Parish School Board v. Pittman Construction Co.,.... These code articles provide for a ten-year prescription against all undertakers (contractors) and architects and are generally applicable to construction work, except where (as here) modified by a special statute.
The intention of the legislature in enacting La. R.S. 38:2189 is more easily discernable when one considers the applicable law as it existed prior to the enactment of La. R.S. 38:2189 in 1962. Prior to that time, a claim by the State or any other owner against a contractor for badness of workmanship was governed by Louisiana Civil Code articles 2762 and 3545 [now Art. 3500]. Orleans Parish School Board v. Pittman Const. Co., Inc., 261 La. 665, 260 So.2d 661 (1972). Article 2762 provides:
If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks.
In Orleans Parish School Board, this court held that Article 2762 "is a statement of a general law of warranty", id. 260 So.2d at 666, which establishes a substantive right in favor of the owner that the contractor and the architect "shall be responsible if the building shall fall to ruin within ten years, either in whole or in part on account of badness of workmanship." Id. at 667. Thus, there can only be a cause of action under Article 2762 if the defect or ruin comes into being and is discovered within the ten years discussed in the article. "This cause of action, therefore, only comes into being when there is a discovery of ruin in the building within the time limit stated in the article." Id. We stated in that case that the time within which the action must brought once it has accrued was governed by Article 3545 [presently Article 3500] which provides in pertinent part that an action against a contractor for defects in construction "is subject to a liberative prescription of ten years." The two code articles operate together such that a contractor could be timely sued on a defect discovered in the tenth year provided the suit was filed within ten years from that discovery for a possible exposure of up to 20 years on the contract. Orleans Parish School Board, 260 So.2d at 667-68.
*946 We turn now to the issue of whether La. R.S. 38:2189 is peremptive, and therefore not susceptible of suspension, interruption or renunciation for any reason, or prescriptive. We do so ever mindful of the earlier discussed jurisprudence of this court holding that peremption is a matter to be determined by legislative intent and public policy. Considering the plain, explicit language of the statute, the obvious purpose behind the statute, and the readily apparent public policy which mitigates against suspension, interruption or renunciation of that time limit and in favor of certainty in the termination of causes of action, we conclude that La. R.S. 38:2189 establishes a time limitation which is peremptive in nature.
Looking to the language used in the statute, we note it specifically states that any action against the contractor on the contract or on the bond or against the surety on the bond having to do with the construction of any public work let by the state or any of its agencies, boards or subdivisions shall prescribe 5 years from the substantial completion or acceptance of such work, whichever occurs first, or from notice of default of the contractor. Both substantial completion and notice of acceptance are specific, well-understood occurrences and are discussed in the Public Works Act as defining, significant events of the construction process. See La. R.S. 38:2241.1. These words are clear and unambiguous, and reflect an intent by the legislature to set forth a precise period of time to govern the filing of suit by a state entity against a general contractor or its surety under the Public Works Act.[8] Legislation should be interpreted in a manner to give it effect rather than to render it meaningless. State v. All Pro Paint & Body Shop, Inc., 639 So.2d 707, 716 (La.1994); State v. Union Tank Car Co., 439 So.2d 377, 382 (La.1983). If we found La. R.S. 38:2189 to be prescriptive and capable of being suspended or interrupted for any reason, then no claim would ever prescribe within five years from the specific dates of substantial completion or notice of acceptance. This would totally abrogate the application and effect of La. R.S. 38:2189 and render it meaningless. Certainly, the legislature could not have intended to engage in an act of futility.
More importantly, however, the readily apparent public policy which underlies the statute weighs in favor of our finding the statute is peremptive. A conclusion that La. R.S. 38:2189 is prescriptive, and thus susceptible of suspension, interruption and renunciation, abolishes the statute's clearly stated time limitation and substitutes for it an unknown date potentially very far in the future, thereby preventing the surety, from whom the general contractor must obtain a performance bond in order to contract with the State, from ever accurately calculating to any degree the length of its possible exposure under the statutory bond. It is self-evident that providing a certain time period for which the surety will be exposed to liability on the bond as well as reducing the length of exposure from up to 19 years under La. C.C. arts. 2762 and 3500 to 5 years under La. R.S. 38:2189 will result in reducing the cost of the bond, the contractor's bond expense, and thus the price paid by the State for the construction of the public work. An obvious purpose of public contract laws is to advance the interest of the taxpaying citizens of this state. Haughton Elevator Division v. State, 367 So.2d 1161, 1164 (La.1979). It is axiomatic that lower public works contract costs improve the public fisc. A finding that this statute is prescriptive, as opposed to peremptive, would have the opposite effect, driving up the price of the bonds, assuming one could even be obtained with such unending exposure, and thereby the price of the contracts. We cannot question the legislature's wisdom in deciding to provide certainty and finality to claims involving public works contracts at the expense of limiting its own ability to have claims adjudicated.
*947 Not only would concluding La. R.S. 38:2189 is prescriptive and not peremptive frustrate the obvious public policy behind the statute, but it would also belie the legislature's obvious intent to provide a period of time within which the State could sue a general contractor shorter than that provided to private persons who sue their general contractors under La. C.C. arts. 2762, 3550 and La. R.S. 9:2772. For example, if the State had five years from the discovery of the defect in which to sue, as the State urges herein, such a claim would be able to be brought five years from the discovery of the defect in the 10th year under La. C.C. art. 2762 and Orleans Parish School Board, supra, interpreting same, for a total of 15 years from filing of notice of acceptance or substantial completion. A private person's claim against a general contractor on a contract is subject to La. R.S. 9:2772 which generally only gives him 10 years from the filing of notice of acceptance within which to sue. The State's interpretation would give the State more time than is given to the private person in which to bring an action against the general contractor, a result which is directly contrary to the obvious intent of La. R.S. 38:2189, and unmindful of the crucial difference for our purposes between the private works contract and the public works contract. A bond is not required in a private works contract, nor is the State overly concerned with the price of private works contracts. This distinction perhaps underlies the Legislature's decision to provide different time limitations to these otherwise similar actions.[9]
Plaintiff argues that the State would not, in fact, have 15 years in which to sue because La. R.S. 9:2772 would apply to the claim to provide a ten year peremptive limitation on the ability to bring such claims. In an obvious attempt to shorten the length of exposure of certain parties on certain claims under La. C.C. arts. 2762 and 3500, the legislature passed La. R.S. 9:2772 which essentially provides in pertinent part that no action to recover damages in tort, in contract, or for wrongful death shall be brought against any person performing the construction of an improvement to immovable property more than ten years after the date of registry of notice of acceptance or after the improvement has been occupied by the owner where no acceptance is recorded. The statute itself states that causes of action which fall under its scope are perempted if not timely brought. As explained earlier, however, the Public Works Act is sui generis and provides the exclusive remedies to parties who proceed thereunder. This is especially true where the Act specifically provides an explicit time limitation which applies to claims brought by the State. Furthermore, La. R.S. 38:2189 is a specific law pertaining only to general contractors and their sureties in suits by a public entity which arise out of the construction of a public work. The ten year peremptive period provided in La. R.S. 9:2772 is a statute of general application which applies to any building contract dispute. It is well established that a special law prevails over a general law on the same subject in the particular matter to which the special law applies. State ex rel. Bickman v. Dees, 367 So.2d 283, 291 (La. 1978); Hayden v. Richland Parish School Board, 554 So.2d 164, 167 (La.App. 2d Cir. 1989), writ denied, 559 So.2d 124 (La.1990).[10] Plaintiff would have us find that in enacting La. R.S. 38:2189, the legislature, despite the fact that it explicitly stated the State's claim could only be brought within five years from certain particular occurrences, intended that this time limitation be susceptible of interruption and suspension while at the *948 same time subject to a peremptive ten year cap supplied by La. R.S. 9:2772. While observing the fact that La. R.S. 9:2772 was not even enacted until two years after the enactment of La. R.S. 38:2189[11], we further see no intent in the language of the statutes which reveals they should be harmonized this way.
For the aforementioned reasons, we conclude La. R.S. 38:2189 erects a peremptive time limitation on the State's ability to bring suits against the contractor or the surety on a public works contract. We can think of no way in which the legislature could have more explicitly stated that claims by the State against a general contractor arising out of a public works contract shall be brought only in this specific five year period and not thereafter without our having to conclude that it was necessary for the legislature to specifically state in the statute that it is peremptive and not susceptible of suspension, interruption or renunciationsomething we expressly hold today is not necessary for us to conclude a statute is peremptive. The plain language of the statute, the fact that the statute would be meaningless if we allowed the time limitation thereunder to be suspended, interruption or renounced, the obvious legislative intent to create a time limitation for these types of contracts which would be shorter than that applicable to private works contracts, and the public policy underlying the statute which mitigates in favor of providing certainty and finality to these types of claims in order to reduce contract costs, all lead us to conclude La. R.S. 38:2189 is a statute of peremption.
Accordingly, because the State's suit was not filed within five years from the registry of the notice of acceptance, we reverse the court of appeal's affirmance of the trial court's denial of defendants' peremptory exception of prescription.
REVERSED.
LEMMON, J., dissents and assigns reasons.
JOHNSON, J., dissents.
LEMMON, Justice, dissenting.
In determining legislative intent, the majority relies upon two principal theories. First, the majority states that the Legislature set forth a specific event that governs the commencement of the five-year period for filing of suit by a state entity against a general contractor or its surety, noting that La.Rev.Stat. 38:2189 requires suit within five years of the substantial completion or acceptance of the work. Section 2189, which itself states the period is prescriptive, is no different from any other prescriptive statute. Virtually all prescriptive statutes state the specific event for the commencement of the period of prescription,[1] but that general commencement date in a true prescriptive statute is subject to application of the doctrine of contra non valentem in appropriate cases. I therefore conclude that the establishment of a specific event for the commencement of a period denominated prescriptive by the statute itself is not an indication of any legislative intent for a peremptive statute.
The other principal theory set forth by the majority is that if the commencement of the five-year period was suspended until the discovery of the defect in construction, then the five-year period would never be applicable in any case. The majority states that the Legislature could not have intended such an "act of futility."
The majority overlooks the fact that the doctrine of contra non valentem applies only when the creditor knew or should have known of the existence of his cause of action. Section 2189 applies a five-year prescriptive period for defects in construction of which the state agency knew or should have known by inspection of the construction. It is only when the defect in construction is a latent defect which was not subject to discovery that the doctrine of contra non valentem applies. In such a case, the commencement of the prescriptive period is suspended until discovery, at which time the five-year prescriptive *949 period of Section 2189 begins to run. Concededly, many or even most cases will involve latent defects, and the five-year prescriptive period will not apply in such cases, but this does not mean that the five-year prescriptive period will never apply.
Significantly, the Legislature could have expressed its intent for a peremptive period by such language "in all events such claims shall be filed at the latest within a period of[2] five years of the specified event, or "in no event more than [five] years after the"[3] event, or some such similar language. However, the Legislature did not do so in this case; rather, the Legislature specifically called this a prescriptive period rather than a peremptive period.
Finally, I see no compelling public policy reason (or any reason except powerful legislative lobby) for imposing peremptive periods on state entities in actions against contractors while private parties enjoy the advantages of prescriptive periods.
I therefore dissent from the judgment maintaining the exception of prescription or peremption.
NOTES
[*] KNOLL, J., not on panel. See Rule IV, Part 2, Section 3.
[1] See cases cited in Corsey, 375 So.2d at 1322.
[2] Of course, "[t]his principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." Corsey, 375 So.2d at 1322.
[3] An example of a peremptive statute which provides the period of time in which a suit must be filed but which does not create the cause of action perempted therein is La. R.S. 9:2772 which provides, inter alia, that any action to recover damages whether in contract or in tort brought against a person performing or furnishing the design, planning, supervision, inspection, observation or construction of an improvement to immovable property generally shall be brought within 10 years after the date of registry of the notice of acceptance or from possession of the improvement. Enactment of this statute did not create any new cause of action. Louisiana Civil Code article 2762 has long provided the source of liability for an action on the contract for defective workmanship in the construction of a "building", and Article 2315 has long provided the source of liability for delicts causing personal injury. In Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles, 366 So.2d 1381 (La.1978), this court implicitly held, without any discussion, that this statute was peremptive.

Likewise, today we hold La. R.S. 38:2189 is a statute of peremption although its enactment did not create a new cause of action, and La. C.C. art. 2762 continues to be the source article providing the warranty which gives rise to the State's ability to bring a cause of action under La. R.S. 38:2189.
[4] Section 1 to Act No. 224 of 1918 provided in pertinent part (emphasis added):

Be it enacted ... That when public buildings... are about to be constructed ... at the expense of the State ... it shall be the duty of the official representative thereof to reduce said contract to writing ... and to require of the contractor a bond, with good and solvent and sufficient surety, in a sum not less than fifty per cent of the contract price, for the faithful performance of the contract ... and with an additional obligation for the payment by the contractor and by all subcontractors for all work done, labor performed, or material furnished in the construction, erection, alteration or repair of such building....
[5] This requirement is in derogation of both parties' freedom of contract, and a statute which limits or restrains freedom of contract must be strictly construed. A. & M. Pest Control Service, Inc. v. LaBurre, 247 La. 315, 170 So.2d 855, 857 (1965).
[6] Applying the above principles of statutory construction, courts of appeal have refused to provide parties involved in public works construction any rights beyond those specifically enumerated in the Public Works Act. Although these cases dealt with judicial interpretation of statutes other than the one particularly at issue in this case, they are reflective of the rule of interpretation applicable to the entire Public Works Act, which includes the statute at issue in our case, that the Act provides the exclusive remedies available to parties proceeding thereunder. For example, in Metro Builders Hardware, Inc. v. Burko Construction, Inc., et al., 93-1970 (La.App. 4th Cir. 2/25/94), 633 So.2d 838, writ denied, 94-0727 (La.5/6/94), 637 So.2d 1049, a materialman who supplied materials to the general contractor filed a suit against the contractor and the surety seeking the amount due and attorney's fees and penalties under La. R.S. 38:2246 of the Public Works Act and La. R.S. 22:1220 of the insurance code. The fourth circuit held that because the Public Works Act is "sui generis and provides exclusive remedies to parties in public construction work", and because the liability of the surety "should not be expanded beyond the statute," id. at 839, the surety could not be held liable for penalties under La. R.S. 22:1220. Similarly, in Dixie Bldg. Material Co., Inc. v. Liberty Somerset, 94-1373 (La.App. 4th Cir. 3/29/95), 656 So.2d 1041, a subcontractor filed suit against a general contractor and its surety seeking payment for materials furnished in conjunction with a public works contract. The trial court awarded plaintiff attorney's fees under La. R.S. 38:2246 but additionally awarded attorney's fees again under La. R.S. 9:2781 and 9:3202. The court of appeal held that because the Public Works Act provides the exclusive remedies available to parties in public construction work, double recovery of the attorney's fees under the statutes not located in the Public Works Act was impermissible.
[7] See also State ex rel. Guste v. Simoni, Heck and Associates, 297 So.2d 918, 920 (La.App. 1st Cir. 1974), writ granted, 320 So.2d 547 (1975), reversed on other grounds, 331 So.2d 478 (La. 1976).

There can be no doubt from the clear and unambiguous language of the statute that it was the intent of the Legislature to set forth a precise prescriptive period to govern the filing of suits by the state or any of its agencies, boards or subdivisions on the contract or contract bond, or against the contractor or the surety or both on the bond furnished by the contractor.
[8] We note that although La. R.S. 38:2189 uses the term "prescription" in its body and title, we have explained, supra, that while some weight should be given to the use of these terms in a statute, it is the legislative purpose sought to be achieved by a particular limitation which is the most significant and determinative factor in distinguishing a peremptive statute from a prescriptive one.
[9] Another significant difference is that the State, unlike most private parties who enter into construction contracts, employs engineers whose duty it is to oversee the construction of public works. Record at pp. 251-52. The State therefore is able to more quickly discover defects in the construction process. Indeed, recommendation by the engineers of the governing authority involved in the public works project is necessary for notice of acceptance to be filed.
[10] In Hayden, 554 So.2d at 167, the second circuit observed:

The rules of statutory construction provide that where two statutes deal with the same subject matter they should be harmonized if possible but if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.
[11] Louisiana R.S. 9:2772 was enacted by Acts 1964, No. 189, 1.
[1] The prescriptive period for delictual actions, for example, commences on "the day injury or damage" is sustained. La. Civ.Code art. 3492.
[2] La.Rev.Stat. 9:5628.
[3] La.Rev.Stat. 9:2772, which denominates the period as peremptive.