liYELVERTON, J.
Defendants-relators, CanadianOxy Offshore Production Company and Century Indemnity Company, as Successor to CCI Insurance Company, as Successor to Insurance Company of North America, sought supervisory writs from the district court judgment which denied their exceptions of prescription and no right of action and no cause of action based on peremption. We called up the case for briefing, arguments, and a full opinion.
|2The plaintiffs are the wife and major children of Lee Gilbert Evans, Jr. Evans was employed by Cities Service Company from 1946 until 1980. The petition alleges that during his employment, Evans was exposed to carcinogenic chemicals and contracted multiple myeloma as a result of this exposure. The suit alleges that Evans died on September 2,1981, as a result of his contraction of multiple myeloma. The Evans family filed a suit for damages on February 19, 1997, sixteen years after his death. The suit is both a survival action and a wrongful death action.
CanadianOxy was named a defendant as the successor to Cities Service Company. CanadianOxy along with its insurer, Century Indemnity Company, filed exceptions of prescription and peremption, and peremptory exceptions of no right and no cause of action based on peremption. Following a hearing, the district court denied all exceptions.
At the hearing on the peremptory exceptions, affidavits of the plaintiffs were introduced without objection. The defendants offered no evidence to counter the averments of the affidavits or the petition. Their argument to the survival action is that it is nonexistent due to peremption. As to the wrongful death claim, they argue that the evidence at the hearing on the exception of prescription is factually insufficient to substantiate suspension. The trial court found that the Evans family was unaware of their claim, and that they had acted reasonably under the circumstances. We find no error in this factual determination.
The Evans family asserts that the time limitations for both their survival and wrongful death claims have been suspended under the ancient civilian doctrine of contra non valentem agere nulla currit praescriptio. The Evans family argues thatjjthey were not aware that Evans’ cancer could be caused by toxic exposure while working at Cities Service until mid-March 1996. Apparently, the process of discovery of this connection began when Evans’ daughter-in-law was told by a friend that she should contact the attorneys presently representing the Evans family and inquire of these attorneys as to whether on not there could be a connection between Evans’ diagnosis of multiple myeloma and his employment at Cities Service. The law firm had represented the friend’s father in a lawsuit against Cities Service. The Evans’ family then filed suit alleging in their petition that Cities Service fraudulently withheld information that exposure to carcinogens in the Cities Service workplace could cause blood cancers, including leukemias and multiple myelomas. Specifically, the Evans family claimed that Cities Service notified its employees that it was having a study performed by the Memorial Sloan Kettering Institute to study cancers in the workplace of petrochemical workers and that Cities would contact them when results were obtained. The Evans family claimed that they were never contacted and that Cities Service intentionally concealed the information that the carcinogens in the workplace could cause multiple myeloma. They also pleaded “theft” of their cause of action by this conduct.
The application raises two issues. The first is whether peremption of plaintiffs’ La. Civ.Code art. 2315.1 survival action is suspended under contra non valentem if defendant’s fraud prevented the exercise of their *468 rights. The second issue is whether the allegations and proof of fraud were sufficient to suspend the running of prescription for bringing a wrongful death action pursuant to La.Civ.Code art. 2315.2.
j,, SURVIVAL ACTION
Article 2315.1(A) provides for a survival action. In pertinent part:
If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased ...
The one-year period of limitation for a survival action is peremptive. Guidry v. Theriot, 377 So.2d 319, (La.1979); Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899 (1900). “Statutes of peremption destroy the cause of action itself.” Guillory, 28 So. at 901. “That is to say, after the limit of time expires the cause of action no longer exists; it is lost.” Id. The question before us is whether the peremption can be fraudulently obtained.
“[Pjeremption is a matter to be determined by legislative intent and public policy.” State through Div. of Admin. v. McInnis Bros. Const., 97-0742, p. 12 (La.10/21/97); 701 So.2d 937, 946. If there is a readily apparent public policy which militates against suspension, interruption or renunciation of the time limit and in favor of certainty in the termination of causes of action, the legislation establishes a time limitation which is peremptive in nature. Id. The converse is also true.
One category of contra non valentem agere nulla currit praescriptio as explained in Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979), applies when the debt- or himself has done some act that effectually prevents the creditor from availing himself of his cause of action. “[C]ontra non valentem has always been a judicially created equitable doctrine applied to ameliorate the harshness which would result from the strict application of prescription in certain situations.” McInnis Bros. \5Const., 701 So.2d at 940. No court has held that peremption may be fraudulently obtained.
The Evans family has cited the case of Nathan v. Carter, 372 So.2d 560 (La.1979), arguing that the facts in Nathan, being almost identical to those in this case, demonstrate implicitly that a tortfeasor may not defraud his victim through peremption of a cause of action. Wallace Nathan was employed by Avondale Shipyards, Inc., as a labor leaderman. As he was walking along a gangplank situated between a vessel and the dock, the gangplank suddenly collapsed, causing him to suffer serious injuries, fall into the water, and drown. His injuries and his death, and therefore all events which might trigger both survival and wrongful death damages, occurred on the same day. His wife and children sued for damages almost six years later claiming that Wallace’s death was caused by the negligence of the named executive officers, directors, and employees of Avondale. The suit alleged that the one-year period of limitation lapsed before instituting suit because of misrepresentations and fraudulent conduct of certain employees and representatives of Avondale designed to prevent the wife from asserting her cause of action. The supreme court found that plaintiffs’ delay in bringing the action was a direct result of the fraud or misrepresentation allegedly committed by defendants rather than of their own willfulness or negligence and set aside the judgment of the trial court sustaining the exception of prescription.
The Evans family recognizes that the supreme court in Nathan did not mention per-emption but argues that it is implied in the court’s ruling. It is difficult for us to say. The supreme court described the suit as an “action to recover damages,” 16which could be both survival and wrongful death. Nathan, 372 So.2d at 561. No distinguishing language is used thereafter in the opinion. We cannot put words in Nathan that are not there. The case is helpful, however, in that it exemplifies the historic jurisprudential attitude toward the effect of fraud in dealings between persons. In the present case the plaintiffs rather emphatically allege a case of fraud against the defendants.
*469 Article 2315.1 does not have a statutorily-created exception in a case when fraud is alleged. We think the exception exists for fraud.
Fraud may result from misrepresentation or from silence. La.Civ.Code art.1953:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
II Planiol, Civil Law Treatise, No. 234 (La. State Law Institute Translation 1959), makes short shrift of the discussion of responsibility in case of fraud, explaining simply, “The debtor guilty of fraud is always responsible for the prejudice he causes. Fraud is the more serious of all the other faults, and it was impossible in any case to exonerate the debtor who was guilty thereof.” Planiol epitomizes the civilian view of responsibility for fraud.
It is a common law maxim, also, recognized and adopted by McDuffie v. Walker, 125 La. 152, 51 So. 100, 105 (1909), that ‘fraud cuts down everything,’ acknowledging the ancient principle that a person cannot be allowed to profit by his own wrongdoing. The abhorrence with which the law looks upon fraud was stated frin this often cited quotation from Bullard v. Zimmerman, 88 Mont. 271, 277-78, 292 P. 730, 732 (Mont.S.Ct.1930):
“Fraud being the arch enemy of equity, a judgment obtained through fraud practiced in the very act of getting it will be set aside by a court of equity upon seasonable application. Indeed, the power of a court of equity to grant such relief is inherent. ... The conscience of the chancellor moves quickly to right the wrong, when it is shown that through imposition practiced upon the court by a litigant an unfair advantage has been gained by him and thus it has been made an instrument of injustice.... In the language of Lord Chief Baron Pollock in Rogers v. Hadley: ‘Fraud cuts down everything. The law sets itself against fraud to the extent of breaking through almost every rule, sacrificing every maxim, getting rid of every ground of opposition. The law so abhors fraud that it will not allow technical difficulties of any kind to interfere to prevent the success of justice, right and truth.’
[[Image here]]
With equal profundity and eloquence Chief Justice Monroe of the Louisiana Supreme Court in 1916 stated: “No law was ever enacted which contemplated the defeat of its purpose by fraud, and no court was ever organized which would knowingly permit a litigant to profit by his own wrong,” concurring in Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598, 606 (La.1916). Hyman in general and the concurring opinion of Chief Justice Monroe in particular are cited to this day for the contra non valentem exception to prescription. See Plaquemines Parish Com’n. Council v. Delta Development, 502 So.2d 1034 (La.1987).
Louisiana Code of Civil Procedure Article 2004 recognizes that a judgment can be annulled for fraud within a year of the discovery of the fraud. Peremption is not a judgment, but it has the effect of one because when the peremptive period has run, the cause of action itself is said to be extinguished. State, |8Through Div. of Admin., 701 So.2d 937. We also note that there are peremptive statutes that specifically provide for an exception when fraud exists. See La. R.S. 9:2772(H) (peremptive period for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon); La.R.S. 9:5604(E) (actions for professional accounting liability); La.R.S. 9:5605(E) (actions for legal malpractice); and La.R.S. 9:5606(C) (actions for professional insurance agent liability). This legislation demonstrates that fraud can be an exception to the application of peremption.
One justice of the supreme court has expressed the view, in a concurring opinion in Whitnell v. Menville, 540 So.2d 304 (La. 1989), that one of the categories of contra non valentem, when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies, should apply to a peremptive period. Justice Lemmon did not believe the Legislature intended to impose a peremptive period in cases in which the alleged debtor withheld *470 from the creditor the only information on which the plaintiff could state a cause of action against the debtor, in that case a doctor. He stated that traditional notions of fairness and substantial justice dictate that the doctor could not avail himself of a defense based on the plaintiffs lack of knowledge of information which the doctor had affirmatively withheld from the plaintiff. This comports with the recent statement in State, Through Div. of Admin., 701 So.2d 937, that peremption is to be determined by legislative intent and public policy.
We hold that peremption of plaintiffs’ La. Civ.Code art. 2315.1 survival action is suspended under contra non valentem if defendant’s fraud prevented the ^exercise of their rights. The plaintiffs have pleaded and demonstrated by affidavits that the defendants affirmatively and deliberately withheld knowledge they had promised to reveal that plaintiffs possessed a cause of action and that this fraud prevented the exercise of their rights.
The plaintiffs have pleaded alternatively, in the event suspension does not apply, that the conduct of the defendants amounts to a “theft” of their cause of action. The Roman law recognized the right to recover damages if fraud caused the loss of a right of action through lapse of time. “A suit on the ground of fraud should be granted against a person by whose deceit a right of action was lost through lapse of time; not in order that restitution might be made by the judge, but that the plaintiff might recover damages for the interest he had in the right of action not being extinguished.” 3 Scott, Digest of Justinian, Book IV, Title III, § 18.4, pp. 73-74.
The eminent and incontrovertible justice of such a rule suggests, without any further research, that a cause .of action for damages based on fraud is stated when plaintiffs allege facts supporting a finding that, by the defendants’ fraudulent conduct, they have lost a cause of action by peremption. However, it matters little whether it be said that their cause of action has been fraudulently “stolen” from them, and they have an action in damages for the “theft,” or that their original survival action is saved from extinction by contra non valentem suspension, for their damages would in any event be the same.
_JjoWRONGFUL DEATH .
Louisiana Civil Code Article 2315.2 provides for the wrongful death action. There is no time limit expressed in Article 2315.2. The one-year period for bringing a wrongful death action is prescriptive. Guidry, 377 So.2d 319; McClendon v. State, Through Dept. of Corrections, 357 So.2d 1218 (La.App. 1 Cir.1978). It can be interrupted or suspended. Id.
CanadianOxy and Century Indemnity point out that sixteen years have lapsed since the death of Evans. They argue that since the Evans family’s wrongful death cause of action has prescribed on the face of the petition, the Evans family bears the burden of proof to rebut the exception of prescription. CanadianOxy and Century Indemnity claim that the Evans family’s evidenee-that the daughter-in-law learned of the claim from a friend that a lawyer should be consulted-is totally insufficient to justify the suspension of prescription. CanadianOxy and Century Indemnity acknowledge that the Evans family assert in their petition that Cities Service fraudulently withheld information concerning the carcinogens in the workplace which could cause cancer. However, they argue that this assertion is not supported by the evidence submitted by the parties.
When a petition reveals on its face that prescription has run, the plaintiff has the burden of showing why the claim has not prescribed or the plaintiff can show that prescription has not run based on one of three theories: (1) suspension, (2) interruption, or (3) renunciation. Anderson v. Beauregard Memorial Hasp., 97-1222 (La.App. 3 Cir. 3/6/98); 709 So.2d 283 (citing Gary v. Camden Fire Ins. Co., 96-0055 (La.7/2/96); 676 So.2d 553 and Wimberley v. Gatch, 93-2361 (La.4/11/94); 635 So.2d 206.) Here, the Evans family alleged that prescription was suspended because Cities Service fraudulently withheld information that prevented them from knowing that they had a cause of action.
*471 We find no evidence in the record to dispute the Evans family’s allegations that Cities Service had perpetrated a fraud on them which prevented their exercising their rights in filing suit. This is what was found in Nathan, 372 So.2d 560, which unquestionably applies to suspension of prescription. The Evans family have set forth sufficient allegations in their petition and facts in their affidavits that their delay in bringing their wrongful death action was a direct result of the fraud or misrepresentation allegedly committed by defendants rather than of their own willfulness or negligence. Therefore, the trial court was correct in denying Can-dianOxy’s and Century Indemnity’s exception of prescription for the wrongful death actions.
For the reasons stated, the writ application of CanadianOxy Offshore Production Company, et al., is denied.
WRIT DENIED.
AMY, J., dissents and assigns reasons.