**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 97-31215**

---

**LOUISIANA INSURANCE GUARANTY ASSOCIATION,**

Plaintiff,

**VERSUS**

**RAPIDES PARISH POLICE JURY, ET AL.,**

Defendants,

*********************************

**RAPIDES PARISH POLICE JURY,**

Defendant - Cross-Defendant - Appellant,

**VERSUS**

**HAFCO, INC.,**

Defendant - Claimant - Appellee.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

July 22, 1999

Before GARWOOD, DAVIS, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

In this appeal we are asked to decide whether the district court erred by granting summary judgment in favor of third-party plaintiff-appellee, Hafco, Inc. ("Hafco"), on its cross-claim against third-party defendant-appellant, Rapides Parish Police Jury, Louisiana ("Rapides Parish"). Hafco, a general contractor, sued Rapides Parish when the parish's surety went bankrupt without paying Hafco for work it had performed on a public works project. Because Hafco is not a proper claimant under the Louisiana Public Works Act ("LPWA"), La. Rev. Stat. 38:2241, *et seq.*, and because there is no privity of contract between Hafco and Rapides Parish, we reverse the district court's ruling and remand this action for further proceedings consistent with this opinion.

I.

In 1986 Rapides Parish entered a contract with CLD Enterprises, Inc. ("CLD"), to renovate a recreational area at Cotile Lake in Rapides Parish, Louisiana. To ensure the completion of the project, Rapides Parish secured a performance bond from a surety, Sunbelt Southern Lloyds ("Sunbelt"). When CLD ultimately failed to complete the project, Rapides Parish demanded that Sunbelt arrange for its completion. Sunbelt complied and contracted with Hafco to complete the project. After Hafco finished the project it requested payment from Sunbelt. When Sunbelt refused Hafco sued Sunbelt and Rapides Parish in Louisiana

3

state court alleging that it was owed $746,691. Sunbelt was subsequently declared insolvent and placed into liquidation.

Hafco then amended its original state court complaint and named the Louisiana Insurance Guaranty Association ("LIGA") as a defendant.[1] On May 22, 1989, LIGA filed an interpleader suit in federal district court naming roughly 60 claimants. Hafco, one of the named claimants, then filed a cross-claim against Rapides Parish and moved for summary judgment. In that motion Hafco alleged that Rapides Parish was liable for the money owed on Hafco's contract with Sunbelt. On January 7, 1991, in a memorandum order, the district court granted Hafco's motion for summary judgment and awarded Hafco $631,938, which was determined to be the amount of money owed Hafco minus various deductions. The district court based its ruling on the finding that Rapides Parish was statutorily liable to Hafco under the LPWA; specifically, La. Rev. Stat. § 2244(B). *See* La. Rev. Stat. § 2244(B). On February 8, 1991, Rapides Parish filed a motion for a new trial, which the court construed as a motion for reconsideration. The district court denied that motion on April 1, 1991, and Rapides Parish appealed that ruling on April 25, 1991. Hafco then moved for final judgment pursuant to Rule 54(b) of the Federal Rules of Civil

_____

[1] LIGA was substituted for the insolvent Sunbelt by operation of law, and is obligated to the extent of "covered claims" which existed prior to the determination of Sunbelt's insolvency. La. Rev. Stat. § 22:1382(1)(b).

4

Procedure. *See* Fed. R. Civ. P. 54(b). The district court granted the motion on June 10, 1991.

In the meantime, a settlement agreement was reached between LIGA and Hafco, in which LIGA agreed to pay Hafco $200,000 in exchange for Hafco's promise to release LIGA from all claims arising from this dispute. On June 12, 1991, the district court approved the settlement agreement and dismissed with prejudice all of Hafco's claims against LIGA. On June 13, 1991, Rapides Parish filed a second notice of appeal, challenging the district court's January 7 order granting summary judgment in favor of Hafco. Then, on June 19, 1991, Rapides Parish filed another motion for new trial. In that motion Rapides Parish argued that the settlement agreement between LIGA and Hafco extinguished the district court's judgment in favor of Hafco, and, in the alternative, that the settlement operated as on offset against any judgment.

On November 11, 1991, in a *per curiam* opinion, the Fifth Circuit dismissed Rapides Parish's June 13 appeal so as to allow the district court to rule on Rapides Parish's June 19 motion for new trial. On November 6, 1997, about six years later, the district court denied the motion.[2] On November 14, 1997, Rapides Parish filed the instant appeal.

---

[2] There is no explanation in the record for this lengthy delay.

5

## II.

We review a district court's summary judgment ruling *de novo*. *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911 (1997). Questions of law, including the construction and effect of an unambiguous contract, are always reviewed *de novo*. *Nolan v. Golden Rule Ins. Co.,* 171 F.3d 990, 992 (5th Cir. 1999). In determining whether the granting of summary judgment was proper, we view all factual questions in the light most favorable to the non-movant. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994).

## III.

On appeal Rapides Parish argues that the district court erred by granting summary judgment in favor of Hafco because Hafco is not a proper claimant under the LPWA. In addition to that statutory argument, Rapides Parish contends that Hafco cannot prevail on a breach of contract action because there is no privity of contract between it and Hafco. We begin our analysis by first determining whether Hafco has a statutory cause of action under the LPWA.

## A.

The district court's summary judgment ruling was based on the finding that Rapides Parish was liable for Sunbelt's debt pursuant to La. Rev. Stat. § 2244(B). That section provides:

> If any objections are made by the claimants
> they shall be tried summarily. Whenever it is

6

> found that the surety is not solvent or
> sufficient to cover the amount of the bond or
> that the governing authority has failed to
> exact the bond or record the bond within the
> time allowed, the governing authority shall be
> in default and shall be liable to the same
> extent as the surety would have been.

La. Rev. Stat. § 2244(B). Based on this provision, the district court found that Rapides Parish was liable to Hafco to the same extent as Sunbelt. Importantly, the district court's analysis rested on § 2244 and § 2244 only. No other statutory provisions in the LPWA were referenced by the district court, and no further analysis was brought to bear. If the district court had ventured beyond § 2244, however, it would have realized that Hafco, as general contractor, is not a proper claimant under § 2244.

Hafco's cross-claim against Rapides Parish is based on § 2244. That section, which is codified within a statutory subdivision entitled "Claims of Subcontractors, Materialmen, and Laborers on Public Works," affords "claimants" the statutory right to recover from a parish or other governing authority when the surety becomes insolvent. The class of claimants that may recover under § 2244 is specifically defined in § 2242 as:

> any person to whom money is due pursuant to a
> contract with the owner or a contractor or
> subcontractor for doing work, performing
> labor, or furnishing materials or supplies for
> the construction, alteration, or repair of any
> public works.

La. Rev. Stat. Ann. § 38:2242(A)(1). Thus, to bring suit as claimant under § 2244 the plaintiff must have some contractual

7

relationship with the owner, a contractor, or a subcontractor. *See Thurman v. Star Elec. Supply, Inc.*, 307 So. 2d 283, 286 (La. 1975) (observing that the public contract law "only embraces creditors of the contractor and subcontractors . . . . [A] claimant must demonstrate a contractual relationship with either the contractor or a subcontractor."). That requirement promotes Louisiana's long-standing policy of protecting certain types of claimants by permitting those claimants to recover from the governing authority. *Louisiana v. McInnis Bros. Constr.*, 701 So. 2d 937, 943 (La. 1997).[3]

In this case the summary judgment record reflects that Hafco is seeking to recover money owed on a contract with Sunbelt, the surety, and not on a contract with the owner, Rapides Parish, or on

---

[3]     Throughout its history Louisiana has sought to protect those who perform work and supply materials for the construction and repair of buildings and other works. *See Louisiana v. McInnis Bros. Constr.*, 701 So. 2d 937, 943 (La. 1997) (explaining this history). At the turn of the 19th century, the first Louisiana Civil Code protected workmen and suppliers by granting them a lien on the building or improvement as well as on the underlying real property. *See* La. Civ. Code art. 3216 (1825); La. Civ. Code art. 3249 (1870); La. Civ. Code art. 3249 (1984). For many years, however, workmen and suppliers engaged by state agencies for public projects were not entitled to the same protection because liens were not enforceable against public property. *McInnis Bros. Constr.*, 701 So. 2d at 943. In 1918, the Louisiana legislature sought to eliminate that inequity by promulgating Act 224, the forerunner to the current Public Works Act, La. Rev. Stat. § 38:2241, *et seq. Id.* Although it did not afford the state workers a lien on the public work itself, it achieved the same end by granting them a "privilege against the unexpended fund in the possession of the authorities with whom the original contract has [sic] been entered into." *Pigeon-Thomas Iron Co. v. Drew Bros.*, 111 So. 182, 183 (1926).

a contract with a general contractor or subcontractor. Indeed, it is undisputed that Hafco never directly contracted with Rapides Parish. Thus, Hafco cannot properly be considered a claimant under the plain language of § 2242. To find otherwise we would have to assume that Sunbelt was transformed from a surety to a general contractor once CLD defaulted and Rapides Parish demanded the completion of the project. We refuse to invoke that legal fiction. The evidence in the summary judgment record plainly demonstrates that Hafco is a general contractor, was hired in that capacity to finish the project, and in fact successfully effected the completion of the project.

We find no merit in Hafco's contention that the district court's ruling is supported by *H & H Sewer Sys., Inc. v. Insurance Guar. Assoc.*, 392 So. 2d 430 (La. 1980). In that case a Louisiana town hired a contractor to install a new sewer system. In compliance with Louisiana law, the contractor procured performance bonds from a surety. After the contractor defaulted on the contract, the surety hired H & H Sewer Systems to complete the project. When the surety went bankrupt, H & H Sewer Systems sued LIGA for money it was owed under its contract with the surety. In the resulting appeal the Louisiana Supreme Court was asked to decide the sole issue of "whether H & H Sewer's claim is a covered claim, that is, one which arises out of and is within the coverage of the performance bonds." *Id.* at 432. The Louisiana Supreme

9

Court held that the claim was covered, and that LIGA was liable, because "H & H Sewer had a direct contract with [the surety] for labor and materials used in performance of the contract between the [town] and [the first contractor]," and "its claim against [the surety] is clearly one arising out of and within the coverage of the performance bonds." *Id.* at 433. That holding does not lend itself to the present case for several reasons.

In *H & H Sewer Systems*, the contractor brought suit against LIGA under 22 La. Rev. Stat. § 1382(1). The determinative issue in that case was whether the contractor's claim against LIGA was a "covered claim" under statutory provisions that govern LIGA's liability. The court's holding was that the contractor's claim was a covered claim because it fell within the coverage of the performance bonds.

In this case, however, the contractor is suing the governing authority, not LIGA, and its right to recovery rests on § 2244, a completely different statute. Moreover, unlike *H & H Sewer Systems*, this case does not turn on a coverage question relating to the performance bond. Instead, we are being asked to decide the much different question of whether Hafco may be considered a claimant under the statutory language of § 2242. Finally, in *H & H Sewer Systems* the contractor sued LIGA based on the terms of a contract it had directly entered with the surety. There is no such contractual relationship between the disputing parties in this

10

case.

We note that the previous version of § 2242 broadly defined claimant as "any person to whom money is due . . . ." La. Rev. Stat. § 2242 (1950). In 1985, however, the Louisiana legislature restricted the scope of that definition through an amendment that added the qualifying phrase "pursuant to a contract with a contractor or subcontractor . . . ." La. Rev. Stat. § 2242(A) (1985). Accordingly, by interpreting § 2242 to exclude Hafco, the general contractor, we are effectuating the manifest intent of the Louisiana legislature.

Accordingly, we conclude that Hafco does not fall within the definition of claimant in § 2242, and thus cannot as a matter of law assert a claim against Rapides Parish under that statute. The district court erred in granting summary judgment to Hafco based on § 2244.

B.

Rapides Parish's second main contention is that Hafco cannot recover on a common law breach of contract claim because there is no contractual privity between Rapides Parish and Hafco.[4] We agree. It has long been recognized in Louisiana that "no action for breach of a construction contract may lie in the absence of privity of contract between the parties." *Rivnor Properties v.*

---

[4] The district court did not expressly address this argument in its order granting summary judgment to Hafco.

11

***Herbert O'Donnell, Inc.,*** 633 So. 2d 735, 743 (La. Ct. App. 1994). Here, there is no dispute that Sunbelt hired Hafco directly, and that Hafco lacked a contractual relationship with Rapides Parish. Thus, as there is no privity between the two parties, Hafco may not recover on a breach of contract claim.[5]

IV.

Based on the foregoing, we hold that the district court erred in granting summary judgment in favor of Hafco on its § 2244 claim against Rapides Parish. We further find that based on the summary judgment record, Hafco may not maintain a breach of contract claim against Rapides Parish, as there is no privity of contract between the two parties. Accordingly, we reverse the district court's judgment and remand this action for further proceedings consistent with this opinion.

---

[5]    Rapides Parish asserts numerous other arguments assailing the district court's grant of summary judgment. Since we have concluded that the district court's decision was erroneous based on its incorrect application of §§ 2244 and 2242, there is no need to consider these additional arguments.