663 So.2d 119 (1995)
UNITED STATES POLLUTION CONTROL, INC., Plaintiff-Appellee,
v.
NATIONAL AMERICAN INSURANCE COMPANY, Defendant-Appellant.
No. 95-153.
Court of Appeal of Louisiana, Third Circuit.
August 30, 1995.
*120 Allen Dale Darden, Michael David Ferachi, Baton Rouge, for U.S. Pollution Control, Inc.
Paul Joseph McMahon III, Lafayette, for National American Ins. Co.
William Littlejohn Goode, Paul Albert Landry, Lafayette, for City of Lafayette.
Before KNOLL, SULLIVAN, and BROUILLETTE[*], Judges.
KNOLL, Judge.
The primary issue on appeal is whether plaintiff, United States Pollution Control, Inc. (USPCI), qualifies as a "claimant" under the Louisiana Public Works Act, La.R.S. 38:2241 et seq.
Finding that USPCI was a claimant, the trial court granted partial summary judgment in favor of USPCI, entitling it to recover the full amount of a performance and payment bond issued by the defendant, National American Insurance Company (National American). The trial court denied USPCI's request for attorney's fees pursuant to La.R.S. 38:2246 and dismissed with prejudice USPCI's claims for contractual interest, attorney's fees, and penalties.[1]
National American appeals, contending that the trial court improperly granted summary judgment on the performance and payment bond because USPCI is not a "claimant" under the Louisiana Public Works Act. USPCI answered the appeal, contending that the trial court improperly denied its motion for summary judgment on the issue of statutory attorney's fees.[2]

FACTS
The City of Lafayette and Martech USA, Inc. (Martech) entered into a "PCB Site Remediation" agreement to clean up a hazardous waste site. Martech provided a performance and payment bond of $222,525 issued by National American as the surety. Martech subcontracted with USPCI to haul and dispose of the hazardous waste at a facility owned by USPCI in the state of Utah. Although the City issued two change orders which increased the base contract *121 price to $425,500, the performance and payment bond was not increased.
USPCI invoiced Martech $342,108.27, representing work done, labor performed, and materials and supplies furnished by USPCI. Martech made a single payment of $93,075. Martech disputed some of USPCI's invoices and claimed the correct total owed was $318,563.92. USPCI agreed to reduce its total charges, which left a balance owed of $225,488.92. Despite amicable demand by USPCI, Martech and National American failed to pay. Subsequently, Martech filed for bankruptcy protection in federal district court for the District of Alaska.
USPCI preserved its claim against National American by recording a sworn statement of claim and privilege in the mortgage records of Lafayette Parish for $225,488.92, together with interest, attorney's fees, and costs.

CLAIMANT UNDER THE PUBLIC WORKS ACT
Appellate courts review summary judgments de novo using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). La.Code Civ.P. art. 966 provides for the granting of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to summary judgment as a matter of law.
Determining whether USPCI is entitled to summary judgment as a matter of law depends upon the resolution of two issues: (1) whether USPCI is a "claimant" as that term is defined in the Louisiana Public Works Act; and (2) if USPCI is a "claimant," is USPCI entitled to attorney's fees pursuant to La. R.S. 38:2246?
The Public Works Act was passed to protect laborers and materialmen involved in public works projects by offering them a vehicle by which they could recover monies owed to them for material or labor spent on behalf of the public works project. See Wilkin v. Dev Con Builders, Inc., 561 So.2d 66 (La.1990). Because laborers and materialmen are prohibited from placing a lien against the actual property which is the subject of the public works project, the Act allows them to assert their claims against the unexpended funds financing the public work or the surety required by the Act. Id. This process has been succinctly summarized by the Louisiana Supreme Court in Construction Materials, Inc. v. American Fidelity Fire Ins. Co., 388 So.2d 365 (La.1980):
The Public Works Act was enacted for the purpose of protecting persons doing work, performing labor or furnishing material for the construction, alteration or repair of public buildings, roads or works of any character. The statute accomplishes this by providing (1) the governing authority must require of the contractor a bond, with solvent surety, for the faithful performance of the contract and payment by the contractor and his sub-contractors for labor or material furnished in the construction, alteration or repair of public works; and (2) generally, a person due money for labor or materials furnished for the construction, alteration or repair of any public works may file a sworn statement of the amount due him with the governing authority and in the mortgage records, which, when timely recorded, makes the governing authority liable for his claim if it is not deducted from payments made to the contractor.
Id. at 366-67 (citations omitted).
La.R.S. 38:2241 requires that a contractor furnish a surety for the faithful performance of the public works contract. Under La.R.S. 38:2241, those who do not enjoy contractual privity with the general contractor on a public work are given a cause of action against the general contractor and his surety as provided for in the statute. However, this cause of action is limited to only those persons who meet the definition of a claimant as defined by the Act. La.R.S. 38:2241; 38:2242. La. R.S. 38:2242 provides in pertinent part as follows:
A. (1) "Claimant", as used in this Chapter, means any person to whom money is due pursuant to a contract with the owner *122 or a contractor or subcontractor for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works, or for transporting and delivering such materials or supplies to the site of the job by a for-hire carrier, or for furnishing oil, gas, electricity, or other materials or supplies for use in machines used in the construction, alteration, or repair of any public works,....
The Public Works Act is sui generis and provides exclusive remedies to parties in public construction work. Metro Builders Hardware, Inc. v. Burko Const., Inc., 93-1970 (La.App. 4 Cir. 2/25/94); 633 So.2d 838; writ denied, 94-727 (La. 5/6/94); 637 So.2d 1049; Martinolich v. Albert, 143 So.2d 745 (La.App. 1 Cir.1962). Because the Public Works Act is in derogation of common rights, it is stricti juris and the liability of a surety may not be expanded beyond the statute. Rester v. Moody & Stewart, 172 La. 510, 134 So. 690 (1931); National Sur. Corp. v. Highland Park Country Club, Inc., 111 So.2d 811 (La.App. 2 Cir.1959).
In an affidavit submitted in support of its motion for summary judgment, USPCI contends that it performed the following work:
USPCI provided the transportation, processing, treatment, and disposal of the waste material in accordance with the terms of the Waste Disposal Agreement. The work done, labor performed, and material and supplies furnished by USPCI under the Waste Disposal Agreement were all in connection with the PCB Site Remediation agreement entered into by the City of Lafayette and Martech. The waste material was transported out of Louisiana and taken to a facility in Utah owned by USPCI.
National American, relying on Javeler Construction Co. v. Federal Insurance Co., 472 So.2d 258 (La.App. 1 Cir.), writ denied, 476 So.2d 354 (La.1985), contends that USPCI's own description of its role in the public works project at issue demonstrates that USPCI fails to meet the definition of "claimant." In Javeler, the First Circuit interpreted La.R.S. 38:2241 as limited to five basic categories:
The plain language of this statutory provision shows the surety bond must cover the following: (1) all work done for the construction; (2) all labor performed for the construction; (3) all material or supplies furnished for the construction; (4) for transportation and delivery of materials or supplies to the site of the job by a for hire carrier; and (5) for furnishing materials or supplies for use in machines used in the construction.
Id. at 262.
Thus, National American argues that because USPCI does not fit within any of the five categories created by the court in Javeler, USPCI is not a claimant within the meaning of the Act and may not assert a claim against it pursuant to the Public Works Act. Although we agree with the court in Javeler, we find National American's reliance on Javeler misplaced as the case sub judice involves a different set of facts.
In Javeler, the First Circuit correctly applied La.R.S. 38:2241 to the particular type of public works project before it, i.e., the construction of a highway. In the case sub judice, the public works project does not involve construction, but PCB remediation. Although distinguished from a construction project in both its means and ultimate purpose, we find the work performed in a PCB remediation project is nevertheless clearly covered by the Act. PCB remediation involves doing work, "repair"[3] or alteration of a hazardous waste site, a public works act, which requires the removal, transportation, and disposal of hazardous waste. USPCI's work would not fit neatly within any of Javeler `s five categories. The Act specifically qualifies a claimant as any person who, inter alia, does work, performs labor, or repairs any public work. National American simply selected words from the Act pertaining to construction, and selected a correct case which involves construction, and overlooks the broader inclusive words that would cover *123 PCB remediation for the City of Lafayette. We find this argument untenable. Given the goal of hazardous waste cleanup projects (repair of a site), and the nature of the means used therefor, a subcontractor performing the transportation and disposal elements of the project clearly performs labor within the repair aspect of the definition of a "claimant." La.R.S. 38:2242(A)(1).
In conclusion, as indicated by USPCI's undisputed description of the work it performed with regard to the PCB remediation project, we believe that USPCI was engaging in labor that would entitle it to claimant status within the meaning of the statute: "any person to whom money is due pursuant to a contract with the owner or a contractor or subcontractor for doing work, performing labor ... for the construction, alteration, or repair of any public works ..." La.R.S. 38:2242(A)(1). For these reasons, we find that the district court properly granted USPCI summary judgment on this issue.
Turning to the issue of attorney's fees, La.R.S. 38:2246(A) provides:
After amicable demand for payment has been made on the principal and surety and thirty days have elapsed without payment being made, any claimant recovering the full amount of his timely and properly recorded or sworn claim, whether by concursus proceeding or separate suit, shall be allowed ten percent attorney's fees which shall be taxed in the judgment on the amount recovered.
No one contests that USPCI performed the work and the balance owing it, $225,488.92, or that USPCI made amicable demand upon National American for payment.[4]
The attorney's fees provision of the Public Works Act is penal in nature and is intended "to encourage and promote amicable settlement of claims arising from public works contracts to the end that persons furnishing materials, supplies, and labor on such projects will be paid promptly, thus avoiding the inconvenience, delay and expense occasioned by litigation." Metro Builders Hardware, 93-1970 at 3, 4; 633 So.2d at 840 (citing Interstate School Supply Co. v. Wilson, 368 So.2d 189 (La.App. 1 Cir.1979)). The statute contemplates recovery of attorney's fees where the debtor withholds or denies payment without cause, thus requiring the creditor to incur attorney's fees associated with the filing of his claim and prosecution of suit thereon to effect collection. If the debtor resists payment of an accurate sworn or recorded claim, his obligation is enhanced ten percent to the creditor who collects the full amount of his sworn or recorded claim. Interstate School Supply Co., 368 So.2d 189.
National American argues in brief that USPCI is not entitled to statutory attorney's fees because USPCI cannot recover "the full amount" of its recorded claim against Martech. National American points out that (1) it is liable only up to the face amount of its bond, $222,525; (2) the bond is less than USPCI's claim of $225,488.92; and (3) Martech's bankruptcy prevents USPCI from recovering the difference between the amount of the bond and the recorded claim ($2,963.92). Therefore, National American contends that the trial court properly denied USPCI's motion for summary judgment on the issue of attorney's fees. We find this argument untenable.
Given the particular facts of this case, we find that it would frustrate the intent and purpose of the attorney's fees provision in the Public Works Act if we were to interpret the statute's "full recovery" provision so narrowly. Courts should not adopt a hypertechnical construction of a statute when a reasonable interpretation can be adopted which will not do violence to the plain words of the statute and which will carry out the legislative intent. Guste ex rel. Courville v. Burris, 427 So.2d 1178 (La.1983). Despite National American's assertions to the contrary, USPCI will recover the limits of the surety bond, the full amount of its claim against National American. Furthermore, because Martech is bankrupt, USPCI's recovery against National American for the *124 amount of its surety bond will for all purposes be the full amount that USPCI will ever recover on this claim. Thus, we find that USPCI is entitled to ten percent attorney's fees based upon $222,525, the face value of National American's surety bond.

DECREE
For the foregoing reasons, we affirm that portion of the district court's summary judgment awarding $222,525.00, the face amount of the surety bond, to USPCI and against National American. We reverse that portion of the district court's summary judgment denying USPCI attorney's fees pursuant to La.R.S. 38:2246, and award USPCI ten percent attorney's fees on the face amount of the surety bond against National American.
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of UNITED STATES POLLUTION CONTROL, INC. and against NATIONAL AMERICAN INSURANCE COMPANY for ten percent attorney's fees pursuant to La.R.S. 38:2246, in the full and true sum of TWENTY-TWO THOUSAND TWO HUNDRED FIFTY-TWO AND 50/100 ($22,252.50) DOLLARS, plus legal interest from date of judicial demand until paid.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[*] Judge Harold J. Brouillette of the Twelfth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The dismissal of USPCI's claims for contractual interest, attorney's fees, and penalties has not been appealed and is now final.
[2] Because no appeal lies from the denial of a motion for summary judgment, USPCI has also filed an application for supervisory writs on the issue of the statutory attorney's fees. The writ, docket number W95-278, has been consolidated with the present appeal.
[3] "Repair" is defined by Webster's New Twentieth Century Unabridged Dictionary as "restoration to a sound or good state after decay, waste, injury, or partial destruction."
[4] USPCI forwarded by certified mail copies of the statement of claim and privilege/lien affidavit to the City of Lafayette, National American, Martech, and Midwest Indemnity Corporation, the managing underwriting agent for National American.