737 So.2d 954 (1999)
ORLEANS PARISH SCHOOL BOARD
v.
SCHEYD, INC., et al.
No. 98-CA-2989.
Court of Appeal of Louisiana, Fourth Circuit.
June 16, 1999.
*955 Robert M. Rosenberg, Larry C. Becnel, Polack, Rosenberg, Endom & Riessm, L.L.P., New Orleans, Louisiana, Attorneys for Plaintiff/Appellant.
Francis P. Accardo, Montegomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, Louisiana, and Gerald A. Melchiode, Galloway, Johnson, Tompkins & Burr, New Orleans, Louisiana, Attorney for Defendants/Appellees.
Court composed of Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY.
JONES, Judge.
Plaintiff/appellant, Orleans Parish School Board (School Board), appeals the judgment of the trial court granting a Motion for Summary Judgment in favor of Hammond Construction Company (Hammond), a division of Scheyd, Inc.[1] Following a review of the record, we affirm the judgment.

FACTS
On December 18, 1984, Hammond, a general contractor, executed a contract with the School Board to build Robert R. Moton Elementary School (Moton School). The contract was executed in accordance with Louisiana's public contract laws, as set forth in La. R.S. 38:2181 et seq. The Moton School was subsequently built and the School Board accepted the work on March 9, 1987.
The Moton School rests at ground level with virtually all of its plumbing and sewerage piping systems sealed and concealed under the school. Metal hangers, which are anchored into the concrete slabs, suspend the pipe lines underneath the school. Hammond subcontracted with Hudson Mechanical, Inc. (Hudson), for the installation of the piping systems at the Moton School.
Approximately four years after the School Board accepted the work (i.e., 1991) the School Board began experiencing problems with the plumbing equipment at the school. Therefore, in an effort to investigate the problems at the school, the School Board hired Lisa Martin Harmon, an engineer, to inspect the plumbing under the school structure. Following her underground excavation and tunneling beneath the school, Ms. Harmon's inspection *956 revealed that the pipes were damaged because the hangers had failed. Ms. Harmon reduced her observations into a report, which was prepared on February 17, 1993.
On August 18, 1993, the School Board filed a lawsuit against Scheyd, its insurers, sureties, subcontractors and design professionals, alleging that the Moton School was not constructed according to its contract with Hammond because the plumbing and sewerage systems at the school were defective. Shortly thereafter, Fidelity & Deposit Company of Maryland, a surety for Scheyd, filed an Exception of Prescription and an alternative Motion for Summary Judgment. Both the Motion for Summary Judgment and the Exception of Prescription were denied. This Court and the Louisiana Supreme Court denied supervisory writs regarding this judgment.
Following some discovery, the School Board decided to voluntarily dismiss its claims against various design professionals; however, Scheyd, Hammond, Hudson and their sureties and insurers remained in the instant case as defendants.
On October 21, 1997, the Louisiana Supreme Court issued State v. McInnis Bros., Const., 97-0742 (La.10/21/97), 701 So.2d 937. Scheyd, its insurers and sureties then renewed their Exception of Prescription and its Motion for Summary Judgment. Hudson also filed a Motion for Summary Judgment.
The School Board conceded that McInnis was in favor of Fidelity & Deposit of Maryland, but denied that McInnis controlled the School Board's tort claim against the general contractor. Moreover, the School Board argues that the Public Works Act was not controlling in its action against Hudson, as the subcontractor. The trial court disagreed and granted all three of the defendants' motions. Further, the trial court certified the judgments as final judgments under LSA-C.C.P. art. 1915(B); however, the trial court did not assign reasons for judgment. It is from this judgment that the School Board appeals.

APPLICABILITY OF La. R.S. 38: 2189 TO THE SCHOOL BOARD'S SUIT
The School Board argues that La. R.S. 38:2189 is not controlling in this case because the School Board's claim arises in tort rather than under contract as stated in the statute. In essence, the School Board argues that it has a one-year period within which to file suit against Scheyd and the time did not commence to run until it received Ms. Harmon's report regarding the condition of the piping and sewerage systems at the Moton School.
Scheyd, on rebuttal, argues that La. R.S. 38:2189 applies to all claims made against a public works contractor accused of building a defective thing. Scheyd further argues that the School Board's insistence that the suit in question is an action in tort is erroneous. Scheyd argues that the School Board's entire cause of action arises out of its claim that Scheyd breached its contract to construct Moton School in a safe condition. We agree.

a. Legislative Intent
The central focus in the instant case is our interpretation of La. R.S. 38:2189, which states:
Any action against the contractor on the contract or on the bond, or against the contractor or the surety or both on the bond furnished by the contractor, all in connection with the construction, alteration, or repair of any public works let by the state or any of its agencies, boards or subdivisions shall prescribe 5 years from substantial completion, as defined in R.S. 38:2241.1, or acceptance of such work, whichever occurs first, or of notice of default of the contractor unless otherwise limited in this Chapter. (Emphasis added).
However, the most recent interpretation of this statute has been through the Louisiana Supreme Court in its decision in State Through Div. of Admin. v. McInnis Bros. *957 Constr., 97-0742 (La.10/21/97), 701 So.2d 937.
In McInnis, the State entered into a contract with the defendant for the construction of a nursing school in Shreveport, Louisiana. Once the structure was erected, the State recorded its Notice of Acceptance with the clerk of court in Caddo Parish on May 9, 1985. In March 1991, the State noticed that the bricks in the exterior wall of the nursing school had begun to shift; yet, the State filed its petition against the defendant and its insurer in July 1994. The State alleged that the school was the product of substandard construction by the defendant.
The defendant answered the suit, filed third party demands against several subcontractors and filed Peremptory Exceptions of Prescription under La. R.S. 38:2189. The State opposed the exceptions under the "discovery rule" of contra non valentum agere nula currit praescriptio. The trial court overruled the exception, and the appellate court declined to exercise its supervisory jurisdiction in the matter. However, the Supreme Court granted writs and determined that the exceptions should have been granted because the statute was peremptive in nature, and not susceptible of interruption, suspension or renunciation.
The Supreme Court reasoned that the legislature intended to both create the right of action and stipulate the time frame within which to assert such right. Therefore, the Supreme Court concluded that if the five-year period in La. R.S. 38:2189 was susceptible of being interrupted, suspended, or renounced, then such a determination would definitely contradict the obvious public policy behind the statute. Accordingly, we support the holding in McInnis.
When the statute does not indicate in plain words that the period is one of peremption, the court must analyze the statute in its entirety and construe the statute with particular focus on whether the purpose sought to be achieved involves matters of public policy or other compelling reasons for absolutely extinguishing a right which is not promptly exercised. See La. C.C. art. 3458; Metropolitan Erection v. Landis Const., 627 So.2d 144, 147 (La. 1993).
The Louisiana legislature has recognized an intent to protect those performing labor and furnishing materials for public works when it passed Act 224 in 1918, which is the predecessor for the current public works statutes. See La. 38:2241 et seq.; and McInnis, supra. Moreover, public contract laws are strictly construed, and the privileges granted therein are not extended beyond the dictates of the statute. Wilkin v. Dev Con Builders, Inc., 561 So.2d 66 (La.1990). (Emphasis added). Thus, we also find that La. R.S. 38:2189 is peremptive in nature.

b. Classification of the School Board's Suit
In this assignment of error, the School Board opposes the use of La. R.S. 38:2189 in the instant matter because, it argues, its cause of action arises in tort rather than under contract. Thus, the School Board argues that the holding in McInnis does not apply to this particular claim. We disagree.
In support of its contention, the School Board cites this Court's decision in Succession of Dubos, 453 So.2d 323 (La.App. 4 Cir.1984), whereby we stated "[t]he same acts or omissions may constitute breaches of both general and contractual duties, and give rise to actions both in tort and in contract." Dubos, 453 So.2d at 324. Further, we held that the plaintiff may assert both actions without specifically disclosing the theory of his case. Id. Though we do not attempt to disrupt the holding in Dubos, we are cognizant of the fact that Dubos is clearly distinguishable from the case sub judice.
Unlike Dubos, this case encompasses a dispute between a public entity and a *958 public works general contractor. Consequently, the Public Works Act, and not state tort law, is the only avenue of recovery for the School Board. "[T]he Public Works Act is sui generis and provides the exclusive remedies to parties who proceed thereunder; this is especially true where the Act specifically provides an explicit time limitation which applies to claims brought by the State [or any of its agencies, boards or subdivisions.]" McInnis, 701 So.2d at 947. See also Metro Builders Hardware v. Burko Const., 93-1970 (La. App. 4 Cir. 2/25/94), 633 So.2d 838, writ denied, 94-0727 (La.5/6/94), 637 So.2d 1049. Therefore, we find the School Board's argument herein to be an attempt to expand the five-year peremptive period under La. R.S. 38:2189, which we have already concluded to be contrary to the legislative intent of the statute.

SCHOOL BOARD'S CLAIM AGAINST THE SUBCONTRACTOR
Lastly, the School Board argues that La. R.S. 38:2189 pertains to actions against general contractors, not subcontractors like Hudson. Therefore, the School Board argues that its claim against Hudson is statutorily permissible.
Hudson, on the other hand, argues that a "subcontractor" is legally classified as a contractor in the Chapter entitled "Professions and Occupations." Thus, Hudson argues that subcontractors are afforded the same protections (i.e., the five-year peremptive period) as general contractors. We agree.
La. R.S. 37:2150.1 states in pertinent part:
The term "contractor" includes general contractors, subcontractors, architects, and engineers who receive an additional fee for the employment or direction of labor, or any other work beyond the normal architectural or engineering services. (Emphasis added).
The definition under the Public Works Acts defines a contractor as "any person or other legal entity who enters into a public contract." See La. R.S. 38:2211(5). Though the statute does not specifically define a "subcontractor," it does define a public contract as a "contract awarded by any public entity for the making of any public works or for the purchase of any materials or supplies." See La. R.S. 38:2211(9).
In this case, Hudson, a subcontractor for the plumbing and sewerage systems at the Moton School, would be classified as a contractor under the Public Works Act. Here, Hudson was obligated to purchase and install the plumbing and sewerage systems for this school, which is a public works project as defined under the Act.[2] Hence, we find that the School Board's suit against Hudson, a subcontractor, is also susceptible to the same five-year peremptive period as are suits against general contractors. Therefore, we find that the School Board's suit against Scheyd and Hudson has been perempted.

DECREE
For the reasons assigned, we affirm the trial court's judgment granting the Motions for Summary Judgment in favor of Scheyd, Inc, Hammond Construction Company and Hudson Mechanical Inc. Each party is to pay its own costs for this appeal.
AFFIRMED.
NOTES
[1] For purposes of clarity, Scheyd shall be used to refer to both Scheyd, Inc. and Hammond Construction Company.
[2] "Public Work" means the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity. See La.R.S. 38:2211(11) (Emphasis added).