**SIEMENS BUILDING TECHNOLOGIES, INC.**

v.

**JEFFERSON PARISH, et al.**

No. Civ.A. 03–2272.

United States District Court, E.D. Louisiana.

Jan. 9, 2004.

Philip Anthony Franco, Elizabeth N. Anderson, Adams & Reese, New Orleans, LA, for Plaintiff.

Daniel Aubry Ranson, Michael Don Peytavin, Windhorst, Gaudry, Ranson, Higgins & Gremillion, LLC, Gretna, LA, for Defendant.

## ORDER

DUVAL, District Judge.

Before this Court is a Motion to Dismiss (Rec.Doc. No. 5) filed by defendants Jefferson Parish and the Jefferson Parish Council ("Jefferson Parish"). After reviewing the pleadings, memoranda, and relevant law, and hearing oral argument, the Court **GRANTS** the motion as meritorious.

*Background*

This matter arises out of a public construction dispute. Jefferson Parish advertised a public bid, Proposal No. 50–59291, for the Construction of the Jefferson Parish Administration Building ("Administration Building"). The bid submission deadline was May 16, 2002.

In March 2002, Jefferson Parish informed plaintiff Siemens Building Technologies, Inc. ("Siemens") that it intended to create a closed proprietary specification in favor of a Johnson Controls, Inc. ("JCI") Metasys Facility Management System ("Metasys System") Heating, Ventilating, and Air Conditioning Control System ("HVAC"). Siemens informed Jefferson Parish that Siemens could save Jefferson Parish money by either purchasing the necessary equipment from JCI and then installing that equipment for Jefferson Parish, or by using Siemens equipment in the installation. The parties discussed whether Siemens should submit bids regarding its HVAC proposals, and Jefferson Parish indicated that it was receptive to saving money. After correspondence between Siemens and Jefferson Parish confirming this conversation, Siemens provided a bid for a HVAC to Towers Mechanical ("Towers"), an eventual Administration Building subcontractor. This bid to Towers included supply of the JCI proprietary equipment specified, the supply of the non-proprietary equipment, and totaled $377,850.000. A competing bid by JCI for the same services was $442,-000.000. Towers incorporated Siemens' bid into its own bid to Brice Building Company, Inc. ("Brice"), the general contractor to whom Jefferson Parish ultimately awarded the Administration Building contract.

Prior to the bidding deadline of May 16, 2002, Jefferson Parish issued Addendum No. 3, which included bidding specifications that required bidders to furnish and install a JCI Metasys System HVAC. The cost of the system, and of the labor in installing it, was to be included in a bidder's price. Addendum No. 3 also provided that "[a] fixed cost for the devices labeled 'proprietary' will be furnished by JCI and published in a subsequent adden-

dum." Then, only seventy-two hours before the bidding deadline, Jefferson Parish issued Addendum No. 5, which purported to create a closed proprietary specification in favor of JCI Metasys System. This addendum indicated a fixed price of $292,721.00 for the materials and proprietary labor that would be supplied by JCI. Addendum No. 5 also specified that the installation cost for the proprietary materials, and for the installation and supply of all non-proprietary materials, was not included in the lump sum to be given to JCI by the contractor.

Jefferson Parish and Brice entered into a contract for the construction of the Administration Building on July 10, 2002. This contract was based on the bid Towers made to Brice, which included Siemens' bid to provide and install both the JCI equipment and all non-proprietary equipment specified.

After the general contract between Jefferson Parish and Brice was executed, Siemens met with Jefferson Parish and Brice to demonstrate its system's ability to integrate with Jefferson Parish's existing JCI Metasys system. Siemens informed Jefferson Parish that using Siemens equipment would save Jefferson Parish an additional $100,256.000. During this meeting, Jefferson Parish stated that, so long as the equipment used worked with their existing JCI system, it did not matter whether Siemens or JCI equipment was used. Siemens then made a post-bid request to substitute Siemens equipment for the JCI proprietary equipment specified.

According to the Complaint, after the equipment substitution meeting, JCI met with Jefferson Parish and convinced them not to use Siemens equipment in updating the HVAC system. Jefferson Parish subsequently denied Siemens' post-bid request to substitute its alternative to the JCI equipment. During continuing discussions, Jefferson Parish only objected to Siemens' proposed substitution of the JCI equipment; Jefferson Parish did not object to Siemens performing the HVAC project with the JCI equipment specified.

At a meeting between Jefferson Parish, Siemens, Towers, and Brice on September 18, 2002, Jefferson Parish informed Siemens that it did not matter where Siemens acquired the JCI equipment or who installed it. Jefferson Parish did not inform Siemens that it would not be permitted to perform the HVAC project. Siemens also alleges that Jefferson Parish remained silent during discussions when Siemens indicated its intention to provide the JCI equipment for the project.

Siemens purchased the JCI proprietary equipment required for Jefferson Parish's project. On February 3, 2002, Siemens prepared a written submittal for the work to be performed by Siemens which included the JCI equipment Siemens purchased for the project. Soon thereafter, by a letter dated February 26, 2003, Jefferson Parish's architect returned the Siemens submittal without engineering review, stating that the Siemens' proposal represented a variance from the Contract Specifications and was not in compliance with the requirements outlined in Addendum No. 5. This was Siemens' first notice that it would not be permitted to perform the portion of the project involving the JCI equipment.

On March 11, 2002, Siemens issued an invoice to Towers in the amount of $134,912.00; $121,901.20 of this amount was for the JCI proprietary materials. Towers then included this amount in its April pay request to Jefferson Parish architect. Jefferson Parish architect subsequently rejected the invoice for Siemens' purchase of the JCI equipment.

Siemens obtained counsel and informed Jefferson Parish that it had "illegally bid

the project with respect to the HVAC Temperature Controls system in violation of the public bid law by improperly designating the JCI equipment as a proprietary closed specification." Jefferson Parish conceded that it had illegally bid the closed specification in violation of the public bid laws and indicated its intention to re-bid the HVAC Temperature Controls portion of the project in a proper manner. Thereafter, on May 14, 2003, Jefferson Parish adopted Resolution No. 98361, in which Jefferson Parish authorized Construction Change Directive No. 1. This Directive deleted from the public bid project the lump sum of $292,721.000 for the materials, equipment, and other proprietary work to be performed by JCI as described in Addendum No. 5. By deleting this portion of the project from the public bid, the proprietary portion of the project was no longer part of the public bid.

Siemens filed a Complaint (Rec.Doc. No. 1) in this Court on August 12, 2003. In its Complaint, Siemens alleges counts of detrimental reliance, unjust enrichment, abuse of right, and tort. On September 24, 2003, Jefferson Parish filed this Motion to Dismiss (Rec.Doc. No. 5), which the Court heard on October 15, 2003.

*Legal Standard & Analysis*

To determine whether a motion to dismiss has merit, *Jefferson v. Lead Ind. Ass'n. Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997) instructs that "[t]he standard to be applied to a motion to dismiss under Fed-

eral Rule 12(b)(6) is a familiar one." The district court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *Fernandez–Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief. *Fernandez–Montes*, 987 F.2d at 284, 285; *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir.1994). However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Fernandez–Montes*, 987 F.2d at 284; *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

■ In Louisiana, public construction contracts are governed by the Louisiana Public Works Act ("LPWA" or the "Act"), La. R.S. 38:2241 *et seq.*, which provides that governing authorities entering into a contract for construction of a public work must furnish a statutory bond. La. R.S. 38:2241(a).[1] La. R.S. 38:2242 establishes the category of claimants who are entitled to recovery under the act:

"Claimant", as used in this Chapter, means any person to whom money is due pursuant to a contract with a contractor or subcontractor for doing work,

---

1. La. R.S. 38:2241(a) provides in pertinent part: For each contract in excess of twenty-five thousand dollars per project, the public entity shall require of the contractor a bond with good, solvent, and sufficient surety in a sum of not less than fifty percent of the contract price for the payment by the contractor or subcontractor to claimants as defined in R.S. 38:2242. The bond furnished shall be a statutory bond and no modification, omissions, additions in or to the terms of the

contract, in the plans or specifications, or in the manner and mode of payment shall in any manner diminish, enlarge, or otherwise modify the obligations of the bond. The bond shall be executed by the contractor with surety or sureties approved by the public entity and shall be recorded with the contract in the office of the recorder of mortgages in the parish where the work is to be done not later than thirty days after the work has begun.

performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works, or for transporting and delivering such materials or supplies to the site of the job by a for-hire carrier, or for furnishing oil, gas, electricity, or other materials or supplies for use in machines used in the construction, alteration, or repair of any public works, including persons to whom money is due for the lease or rental of movable property, used at the site of the immovable and leased to the owner by written contract, and including any architect or consulting engineer engaged by the contractor or subcontractor in connection with the building of any public work.

La. R.S. 38:2242(A)(2). That section also sets forth the process for making a LPWA claim:

Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.

La. R.S. 38:2242(B). The LPWA has been interpreted by the Louisiana Supreme Court to limit claims to those who have a contractual relationship with either the contractor or a subcontractor. *Wilkin v. Dev Con Builders, Inc.*, 561 So.2d 66, 71 (La.1990); *Thurman v. Star Electric Supply, Inc.*, 307 So.2d 283 (La.1975); *American Creosote Works v. City of Monroe*, 175 La. 905, 144 So. 612 (1932); *J. Watts Kearny & Sons v. Perry*, 174 La. 411, 141 So. 13 (1932). These provisions provide "certain classes of persons not enjoying privity of contract with the general contractor or

with the governing authority a claim nevertheless against the general contractor and his surety and in some instances a claim against the governing authority itself." *Wilkin*, 561 So.2d at 71. "The provisions also protect the public authority complying with the requirements of the statutes from expenses caused by failure of the contractor [or subcontractor] to faithfully perform the contract." *Id.* (citing *Town of Winnsboro v. Barnard & Burk, Inc.*, 294 So.2d 867 (La.App. 2d Cir.), writ denied, 295 So.2d 445 (1974)).

 "[P]ublic contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes." *State Through Div. of Admin. v. McInnis Brothers Construction*, 701 So.2d 937, 944, 97–0742 La. 10/21/97 (1997)(quoting *Wilkin*, 561 So.2d at 71); *See also American Creosote Works v. City of Natchitoches*, 182 La. 641, 162 So. 206 (1935); *Rester v. Moody & Stewart*, 172 La. 510, 134 So. 690 (1931). The LPWA is *sui generis* and provides exclusive remedies to parties in public construction work. *McInnis Brothers*, 701 So.2d at 944 (citing *U.S. Pollution Control, Inc. v. National American Insurance Co.*, 663 So.2d 119, 95–153 La.App. 3rd Cir. 8/30/95 (1995)). In *McInnis Brothers*, the Louisiana Supreme Court offered the following observation on the LPWA's exclusivity:

Applying the above principles of statutory construction, courts of appeal have refused to provide parties involved in public works construction any rights beyond those specifically enumerated in the Public Works Act. Although these cases dealt with judicial interpretation of statutes other than the one particularly at issue in this case, they are reflective of the rule of interpretation applicable to the entire Public Works Act, which includes the statute at issue in our case, that the Act provides the exclusive rem-

edies available to parties proceeding thereunder. For example, in *Metro Builders Hardware, Inc. v. Burko Construction, Inc.*, et al., 93–1970 La.App. 4th Cir.2/25/94, 633 So.2d 838 (1994), writ denied, 94–0727 (La.5/6/94), 637 So.2d 1049, a materialman who supplied materials to the general contractor filed a suit against the contractor and the surety seeking the amount due and attorney's fees and penalties under La. R.S. 38:2246 of the Public Works Act and La. R.S. 22:1220 of the insurance code. The fourth circuit held that because the Public Works Act is *"sui generis* and provides exclusive remedies to parties in public construction work", and because the liability of the surety "should not be expanded beyond the statute," id. at 839, the surety could not be held liable for penalties under La. R.S. 22:1220. Similarly, in *Dixie Bldg. Material Co., Inc. v. Liberty Somerset*, 94–1373 La.App. 4th Cir.3/29/95, 656 So.2d 1041 (1995), a subcontractor filed suit against a general contractor and its surety seeking payment for materials furnished in conjunction with a public works contract. The trial court awarded plaintiff attorney's fees under La. R.S. 38:2246 but additionally awarded attorney's fees again under La. R.S. 9:2781 and 9:3202. The court of appeal held that because the Public Works Act provides the exclusive remedies available to parties in public construction work, double recovery of the attorney's fees under the statutes not located in the Public Works Act was impermissible.

*McInnis Brothers*, 701 So.2d at 944 n. 6. *See also Davison v. Winford Co., Inc.*, 827 So.2d 1255, 1259, 2002–0342 La.App. 3rd Cir. 10/2/02 (2002)(LPWA provides exclusive remedies for claimants for public projects); *Orleans Parish School Board v. Scheyd, Inc.*, 737 So.2d 954, 958, 1998–2989

La.App. 4th Cir. 6/16/99 (1999)(LPWA provides exclusive remedies to parties who proceed thereunder); *National Glass & Glazing, Inc. v. Grimaldi Construction, Inc.*, 680 So.2d 56, 64, 96–121 La.App. 5th Cir. 7/30/96 (1996)(LPWA provides exclusive remedies to parties in public construction); *United States Pollution Control, Inc. v. National American Insurance Company*, 663 So.2d 119, 122, 95–153 La. App. 3rd Cir. 8/30/95 (1995).

■ Because this lawsuit arises out of a public construction contract for the Jefferson Parish Administration Building, LPWA protection necessarily attaches. Accordingly, if Siemens qualifies as a LPWA "claimant," then the instant lawsuit must be dismissed due to the Act's exclusivity. This Court finds that Siemens is a "claimant" under La. R.S. 38:2242. In short, Siemens is a subcontractor due money pursuant to a contract with another subcontractor for doing work on and furnishing materials to a public work. Siemens contracted with Towers, a subcontractor, to provide the Metasys System HVAC; Towers incorporated that bid into its contract with Brice, the general contractor; relying on the Towers bid, Brice subsequently contracted with Jefferson Parish, a governing public authority. All contracts pertained to the construction at the Jefferson Parish Administration Building. Consequently, Siemens is a "claimant" under the Act and LPWA exclusivity applies.

Plaintiff's contention that Siemens is not a LPWA "claimant" is without merit. At oral argument and in its Supplemental Memorandum, plaintiff averred that Siemens does not meet the LPWA "claimant" definition because Siemens contract to furnish and install the Administration Building HVAC was "deleted" and is "void and unenforceable" under the LPWA. The Court does not agree. Plaintiff's decision

to purchase and install the HVAC clearly stemmed from its contract with Towers, as did any financial obligation due Siemens as a result of its work. This is apparent from the fact that Siemens submitted a HVAC equipment bill to Towers, who included that sum in a pay request to Jefferson parish, who subsequently denied payment. Plaintiff did not challenge the HVAC public bid until after Siemens obtained and installed the JCI equipment and Jefferson Parish refused payment on the HVAC. Therefore, this Court holds that a public works contract existed between Siemens and Towers and that Siemens consequently qualifies as a "claimant" pursuant to La. R.S. 38:2242. Siemens' *ad hominem* claim that its contract with Towers is null and void is not supported by any citation or logic. Simply because Jefferson Parish "changed horses midstream" does not affect any contract Siemens had with Towers. Siemens' LPWA claim exists to the exclusion of the detrimental reliance, unjust enrichment, abuse of right, and tort remedies sought here.

■ This Court also finds that the application of the LPWA to the instant matter comports with longstanding public works law policy. As noted in *Wilkin,* Louisiana has long sought, through the LPWA and its predecessors, to protect those who perform work and supply materials for the construction of public works. *Wilkin,* 561 So.2d at 70. However, those laws also aim to protect public authorities who comply with the LPWA. *Id.* at 71. Therein lies the justification for the Act's *sui generis* nature and strict exclusivity rule. The LPWA limits claims to those who have a contractual relationship with either the contractor or subcontractor, and extrinsic claims cannot circumvent its exclusivity. *See Orleans Parish School Board v. Scheyd, Inc.,* 737 So.2d 954, 1998–2989 La.App. 4th Cir. 6/16/99

(1999)(holding that LPWA provided an exclusive remedy for a claim against a general contractor and non-LPWA tort claims did not provide an avenue of recovery). Just as the *Scheyd* court refused to permit tort claims alongside LPWA relief, this Court denies plaintiff's attempt to thwart LPWA exclusivity in favor of tort, detrimental reliance, unjust enrichment, and abuse of right. The gravamen of plaintiff's argument against LPWA "claimant" status is the assertion that Siemens' contract with Towers pertaining to the HVAC is no longer enforceable, and this nullification deprives Siemens of the "claimant" element of contractual privity. This Court rejects plaintiff's position, in part because such an outcome would open the floodgates to LPWA circumvention, thereby diluting the very safeguards and protections the LPWA seeks to create. The law simply does not allow parties elude the LPWA to bring outside claims in this case so plainly stemming from a public construction contract. Clearly, Siemens furnished labor and equipment as a result of its contract with Towers. This is not a case where the Court will meddle with so longstanding and unanimous a legal tenet as LPWA exclusivity.

■ Finally, Jefferson Parish contends that the 24th Judicial District Court ("24th JDC") is the only appropriate venue for this action because the general contract between the Parish and Brice provides that the contractor expressly waives any objection to jurisdiction and venue of the district courts of Jefferson Parish. In support of this argument, defendant cites the following cases upholding forum selection clauses: *Smith v. Doe,* 991 F.Supp. 781 (E.D.La.1998), *Digital Enterprises, Inc. v. Arch Telecom, Inc.,* 658 So.2d 20 (La.App. 5 Cir.1995), and *Pique'–Weinstein–Pique' Architects v. New Orleans Aviation Board,* 762 So.2d 76 (La.App. 5 Cir.2000).

Jefferson Parish argues that General Contract § 59 applies to this action because General Contract § 7 incorporates the forum selection clause into all claims arising out of work done by subcontractors. The Court disagrees with Jefferson Parish's venue arguments. Although General Contract § 59 provides that the contractor expressly waives any objection to jurisdiction and venue of the 24th JDC, the general contract does not require that lawsuits be filed in the 24th JDC. This is a critical distinction between the instant action and the cases cited by Jefferson Parish. Unlike the agreements in *Smith, Digital,* and *Pique,* the general contract between Jefferson Parish and Brice does not provide that venue for all claims by all parties shall lie in a specific court. It merely provides that, if the contractor or subcontractors are sued in the 24th JDC, the defendant(s) will not object to venue or jurisdiction. Since no instant party was sued in the 24th JDC, General Agreement § 59 does not apply.

Accordingly,

**IT IS ORDERED** that defendants Motion to Dismiss (Rec.Doc. No. 5) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants Jefferson Parish and Jefferson Parish Council are hereby **DISMISSED WITH PREJUDICE** except to the extent that plaintiff may pursue its claims under and according to the Louisiana Public Works Act, La. R.S. 38:2241 *et seq.*