809 So.2d 947 (2002)
Lonnie C. RENFROE, Individually and on Behalf of the Estate of Rose Renfroe, and Judith Renfroe Prince
v.
STATE of Louisiana through the DEPT. OF TRANSPORTATION AND DEVELOPMENT, Road District No. 1 of the Parish of Jefferson, and the Greater New Orleans Expressway Commission.
No. 2001-CC-1646.
Supreme Court of Louisiana.
February 26, 2002.
*948 Burgess E. McCranie, Jr., Marty R. Dupuy, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie; Daniel A. Ranson, Michael D. Peytavin, Windhorst, Gaudry, Ranson, Higgins & Gremillion, Gretna, Counsel for Applicant.
Michael J. Begoun, Tilden D. Pick, Mark R. Wolfe, Wolfe, Begoun & Pick, New *949 Orleans; Richard P. Ieyoub, Baton Rouge, Counsel for Respondent.
VICTORY, J.
At issue in this case is whether the plaintiffs supplemental and amending petitions, which added Road District No. 1 of the Parish of Jefferson ("Road District No. 1") and the Greater New Orleans Expressway Commission ("GNOEC") as defendants outside of the one-year prescriptive period, relates back to an earlier timely filed petition against the State of Louisiana through the Department of Transportation and Development ("DOTD"). After reviewing the record and the applicable law, we reverse the judgments of the lower courts and hold that plaintiffs action has prescribed.

FACTS AND PROCEDURAL HISTORY
On April 28, 1998, as Rose Renfroe was driving south on Causeway Boulevard approximately two-tenths of a mile before reaching the overpass over U.S. Highway 61 (Airline Highway), her vehicle crossed the concrete median on Causeway Boulevard and collided with a pickup truck and a tractor trailer, both of which were proceeding north on Causeway Boulevard. Mrs. Renfroe was pronounced dead at the scene.
On April 22, 1999, Mrs. Renfroe's husband, Lonnie Renfroe, filed a petition for damages individually, and on behalf of the estate Rose Renfroe and Judith Renfroe Prince, against the DOTD. Plaintiff alleged that the DOTD was liable for Mrs. Renfroe's death under Louisiana Civil Code articles 2315 and 2317 due to improper construction, maintenance, and design of Causeway Boulevard. Plaintiff named the DOTD as defendant based on signs along parts of Causeway Boulevard designating it as "LA 3046" and also because the State Police investigated the accident.
On July 19, 1999, the DOTD filed a motion for summary judgment alleging that, although another part of Causeway Boulevard is a state highway, the state highway begins at Jefferson Highway to the south and ends at its junction with the south right of way line with Airline Highway, which does not include the portion of Causeway Boulevard where the accident occurred.[1] Accordingly, on September 20, 1999, plaintiff filed its first supplemental and amending petition adding Jefferson Parish and the GNOEC as defendants as the proper owners of the portion of Causeway Boulevard where the accident occurred. On October 5, 1999, Jefferson Parish filed an exception of misjoinder and nonjoinder of an indispensible party, Road District No. 1, a separate legal entity, created and governed by Jefferson Parish. Thereafter, on October 15, 1999, plaintiff filed its second supplemental and amending petition, substituting Road District No. 1 as a defendant in place of Jefferson Parish.[2]
On December 14, 1999, the trial court granted partial summary judgment in favor *950 of the DOTD, dismissing the plaintiffs action against the DOTD on all matters connected with the ownership and maintenance of the accident location, finding that the DOTD did not own or maintain that portion of Causeway Boulevard, and leaving the remaining issue against the DOTD that of defective design. On June 30, 2000, the trial court granted the DOTD's exception of peremption on the design defect claim under La. R.S. 9:2772, which provides a seven-year peremptive period for actions involving deficiencies in design. Thus, the DOTD was dismissed from the suit with prejudice.
On August 18, 2000, and October 23, 2000, respectively, Road District No. 1 and the GNOEC filed exceptions of prescription, claiming that the release of the timely sued solidary obligor, the DOTD, caused the case against them to prescribe. The trial court denied the defendants' motions, finding that the suit against Road District No. 1 and the GNOEC related back to plaintiffs suit against the DOTD, and therefore was timely. The court of appeal agreed and denied the defendants' writ application. Renfroe v. State of Louisiana through the DOTD, et al., 01-0292 (3/15/01). We granted the defendants' writ application to determine whether the plaintiffs supplemental and amending petitions relate back to the timely filed suit against the DOTD. Renfroe v. State of Louisiana through the DOTD, et al., 01-1646 (10/5/01), 798 So.2d 952.

DISCUSSION
Delictual actions are subject to a liberative prescriptive period of one year, which commences to run from the date the injury is sustained. La. C.C. art. 3492. The delictual action against Road District No. 1 and the GNOEC was not filed during the one-year prescriptive period, although suit was timely filed against the DOTD. Under La. C.C. art. 3462, prescription is interrupted by the commencement of suit against the obligor in a court of competent jurisdiction and venue. Further, the interruption of prescription by suit against one solidary obligor is effective as to all solidary obligors. La. C.C. arts. 1799 and 3503. The same principle is applicable to joint tortfeasors. La. C.C. art. 2324C. However, a suit timely filed against one defendant does not interrupt prescription as against other defendants not timely sued, where the timely sued defendant is ultimately found not liable to plaintiffs, since no joint or solidary obligation would exist. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992). Because the timely sued defendant, the DOTD, was dismissed from the suit, prescription against Road District No. 1 and the GNOEC is not interrupted and plaintiffs suit against them has prescribed, unless some other basis to revive this suit is found.
Plaintiff argues that the untimely supplemental and amending petitions relate back to the timely filed petition against the DOTD under La. C.C.P. art. 1153. La. C.C.P. art. 1153 provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
In Ray v. Alexandria Mall, Through St. Paul Property & Liability Ins., 434 So.2d 1083, 1087 (La.1983), this Court established the following criteria for determining whether art. 1153 allows an amendment which changes the identity of the party or parties sued to relate back to the date of filing of the original petition:
(1) The amended claim must arise out of the same transaction or occurrence set forth in the original petition;

*951 (2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits;
(3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;
(4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.
Plaintiff argues that all of the criteria of Ray have been met; we disagree. The second Ray criteria is very clearthe purported substitute defendants, in this case Road District No. 1 and the GNOEC, "must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits." Ray, supra at 1087. In this case, there is no evidence in the record, and plaintiff makes no contention, that either of these entities "received notice of the institution of the action." While plaintiff argues that Jefferson Parish received notice of the accident because Jefferson Parish deputies responded to the accident, this is not the same as receiving notice of the institution of the lawsuit. As we stated in Giroir v. South Louisiana Medical Center, Div. of Hospitals, 475 So.2d 1040 (La.1985):
The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period.
There is no doubt that neither Road District No. 1 nor the GNOEC received notice of the institution of the suit within the prescriptive period. However, plaintiff claims that under Findley v. Baton Rouge, 570 So.2d 1168 (La.1990), notice is not technically necessary, and that the real issue is whether the defendants would be prejudiced by the lack of notice. In Findley, plaintiff timely filed suit against the City of Baton Rouge for an accident that occurred in a public park, but, upon learning that the park was actually owned by the Recreation and Park Commission of East Baton Rouge Parish ("BREC"), filed an untimely amended petition adding BREC as a defendant. This Court held that the amended petition against the new defendant related back to the original petition, even though BREC may not have received formal notice of the institution of the lawsuit. Findley, supra. The basis of that holding, however, was that "when there is an identity of interest between the originally named defendant and the party the plaintiff actually intended to sue, the amendment may relate back, in the absence of prejudice, on the basis that institution of the action against one serves to provide notice of the litigation to the other." Findley, supra at 1171 (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1499 (1990); 3 Moore's Federal Practice and Procedure ¶ 15.08[5] (2d ed.1989)). We held that "[s]ufficiency of the identity of interests depends upon the closeness of the relationship between the parties in their business operations and other activities, ...." Id. After analyzing the relationship between the City of Baton Rouge and BREC, we found that it was much the same as that between a parent corporation and a subsidiary, and that, as *952 "Rule 15(c)[3] was amended for the purpose of preventing unjust results when a plaintiff, confronted with a maze of closely related corporate or governmental entities, initially chooses the wrong one to sue, unless prejudice exists," "institution of the suit against the City served to provide `such notice of the institution of the action that [BREC] will not be prejudiced in maintaining [its] defense on the merits.'" Id. at 1172 (citing Fed. R. Civ. Proc. 15(c)).[4]
Unlike in Findley, in this case there is no "identity of interests" between the DOTD and Road District No. 1 or the GNOEC such that notice of the suit to the DOTD would serve as notice to Road District No. 1 or the GNOEC. The relationship between the DOTD and these other defendants has none of the components of a parent corporation and wholly owned subsidiary relationship as was found to be present in Findley. See West v. Parish of Jefferson, 96-530 (La.App. 5 Cir. 11/26/96), 685 So.2d 371 (finding that the City of Kenner and the Parish of Jefferson did not have a sufficient connexity of relationship to make them related parties, such that institution of the suit against one would not serve to provide notice of the litigation to the other). Thus, we find that the second criteria of Ray was not met, as neither Road District No. 1, nor the GNOEC received notice of the institution of the lawsuit within the prescriptive period.
Likewise, we find that the fourth criteria of Ray, that "the purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed," was not met either. In Ray, the plaintiff merely made a mistake as to the proper name of the defendant, naming as the defendant the "Alexandria Mall," rather than the "Alexandria Mall Company." In this case, the plaintiff clearly intended to name the DOTD as the proper defendant, as the plaintiff thought that the DOTD owned and maintained that portion of Causeway Boulevard. When plaintiff later learned that a wholly new defendant, either Road District No. 1 or the GNOEC, owned and maintained that portion of the road, he filed supplemental and amending petitions against them after the prescriptive period. As we held in Findley, the Ray criteria seek "to prevent injustice to plaintiffs who mistakenly named an incorrect defendant, at least when there was no prejudice to the subsequently named correct defendant ... [;] the rule however *953 [does] not apply when the amendment sought to name a new and unrelated defendant." Findley, supra at 1170 (citing Giroir, supra); see also Newton v. Ouachita Parish School Bd., 624 So.2d 44 (La. App. 2 Cir.1993) (holding that where plaintiff timely sued the Ouachita Parish School Board ("OPSB"), mistakenly believing that OPSB supervised and controlled the school where the tortious incident occurred, and then filed an untimely petition naming the Monroe City School Board ("MCSB") as the proper party, the court held that the purpose of plaintiffs amended petition was to name a wholly new defendant and not to merely correct a misnomer, such that suit against the MCSB had prescribed under Ray).
Thus, we find that plaintiffs supplemental and amending petitions against Road District No. 1 and the GNOEC fail to meet the second and fourth criteria set out in Ray for relation back to the original timely filed petition against the DOTD under La. C.C. P. art. 1153.
Plaintiff also argues that the doctrine of contra non valentem operates to interrupt prescription against the two belatedly sued defendants in this case. La. C.C. art. 3467 states that "prescription runs against all persons unless exception is established by legislation." In spite of the clear language of La. C.C. art. 3467, the jurisprudential doctrine of contra non valentem remains a viable exception to this rule. Plaquemines Parish Comm. Council v. Delta Dev. Co., 502 So.2d 1034 (La. 1987); see also La. C.C. art. 3467, Official Revision Comment (d). This Court has recognized four factual situations in which the doctrine of contra non valentem applies so as to prevent the running of liberative prescription:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action;
(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
(4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiffs ignorance is not induced by the defendant.
Id.
Plaintiff argues that the fourth application of contra non valentem applies in this case because the fact that some party other than the DOTD owned or maintained the small stretch of Causeway Boulevard was not reasonably knowable to the plaintiff. The plaintiff claims that he exercised reasonable diligence in ascertaining the proper party defendants and was reasonable in believing that the portion of the roadway was owned and maintained by the DOTD, due to the investigation by State Police at the scene of the accident, and signage on parts of the roadway designating it as a state highway.
However, the doctrine of contra non valentem only applies in "exceptional circumstances." La. C.C. art. 3467, Official Revision Comment (d); State ex rel. Div. of Admin, v. McInnis Brothers Construction, Inc., 97-0742 (La.10/21/97), 701 So.2d 937, 940. In fact, when this Court first officially recognized this fourth type of situation where contra non valentem applies, we specifically clarified that "[t]his principle will not exempt the plaintiffs claim from the running of prescription if his ignorance is attributable to his own wilfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." Corsey v. State of Louisiana, Through the Department of Corrections, 375 So.2d *954 1319, 1322 (La.1979) (citing Cartwright v. Chrysler Corp., 255 La. 597, 598, 232 So.2d 285 (1970); Sumerall v. St. Paul Fire & Marine Ins. Co., 366 So.2d 213 (La.App. 2 Cir.1978)).
While it is indeed unusual that different unrelated parties would own and maintain different portions of one roadway, the fact that the portion of the roadway was owned by some party other that the DOTD was "reasonably knowable" by the plaintiff within the prescriptive period. Thus, the doctrine of contra non valentem does not apply in this case.

CONCLUSION
The plaintiff's action against Road District No. 1 and the GNOEC has prescribed. Plaintiff's supplemental and amending petitions against these two defendants do not relate back to the timely filed petition against the DOTD under the criteria set out in Ray because these two defendants did not receive actual notice of the institution of the action within the prescriptive period, nor do these defendants share an "identity of interests" with the DOTD such that notice to the DOTD would serve as notice to them. Further, the purpose of filing the petition against Road District No. 1 and the GNOEC was not merely to correct a misnomer, but to name wholly new and unrelated defendants who the plaintiff subsequently learned were the proper defendants, rather than the DOTD. Finally, "exceptional circumstances" do not exist in this case which would justify the application of the doctrine of contra non valentem as the party responsible for the ownership and maintenance of the portion of the roadway where the accident occurred was "reasonably knowable" to the plaintiff within the prescriptive period.

DECREE
For the reasons stated herein, the judgments of the lower courts are reversed and the case is remanded to the trial court for the granting of Road District No. 1's and the GNOEC's exceptions of prescription for the reasons stated herein.
REVERSED AND REMANDED.
KNOLL, J., dissents and assigns reasons.
JOHNSON, J., dissents.
KNOLL, J., dissenting.
Although I agree that the majority properly applies Ray v. Alexandria Mall, Through St. Paul Property & Liability Ins., 434 So.2d 1083 (La. 1983), the first mode of analysis utilized in the opinion, I disagree with the majority's rejection of the fourth application of contra non valentem to the facts of this case. As observed in the majority opinion, we have consistently stated that the doctrine of contra non valentem is applicable only in exceptional circumstances. In my view, the facts of this case, as found by the trial court, provide just such an exceptional circumstance.
Contra non valentem has always been a judicially created equitable doctrine applied to ameliorate the harshness which would result from the strict application of prescription in certain situations. State ex rel. Div. of Admin. v. McInnis Brothers Construction, Inc., 97-0742 (La. 10/21/97), 701 So.2d 937, 940. As recognized in the fourth category of contra non valentem, the running of prescription is suspended "[w]here the cause of action is not known or reasonable knowable by the plaintiff, even though his ignorance is not induced by the defendant." Corsey v. State of Louisiana, Through the Dept. of Corrections, 375 So.2d 1319, 1322 (La. 1979).
In the present case, the trial court determined that between Jefferson Highway and the Causeway, at least three entities, the Louisiana Department of Transportation *955 and Development (DOTD), Road District No. 1 of the Parish of Jefferson (Road District), and the Greater New Orleans Expressway Commission (GNOEC), maintain and operate some part of Causeway Boulevard (Causeway). Despite this tripartite arrangement, signs along part of the Causeway designate it as LA 3046. It was not until after this litigation ensued that DOTD produced a document dated February 20, 1961, which showed that it did not control the portion of Causeway where the accident occurred.
Even though in hindsight it may be said that the plaintiff may have discovered the proper authority responsible for Causeway at the accident site within the prescriptive period, I disagree with the majority that this fact was reasonably knowable. I find the following facts established exceptional circumstances: (1) although the Jefferson Parish Sheriffs Office was originally summoned to the accident scene, investigation of this accident was turned over to the Louisiana State Police; (2) the State Police accident report identifies that this accident occurred on LA 3046 at milepost 0.9; and, (3) the document on which the DOTD relied upon to prove it was not responsible for the highway at the accident scene, was a 1962 agreement that DOTD produced. Based upon these facts, I do not find that it was known or reasonable knowable to the plaintiff that the portion of the roadway was owned by some party other than the DOTD.
For these reasons, I respectfully dissent.
NOTES
[1] At some point north of the accident scene, Causeway Boulevard again becomes a state highway.
[2] According to Jefferson Parish's exception of misjoinder and nonjoinder of an indispensable party, the accident site is located within the geographic boundaries of Road District No. 1, which was created pursuant to La. R.S. 48:571 and 582 for the purpose of, among other things, constructing, maintaining, and improving public roads, highways, and bridges within its territorial limits. According to Jefferson Parish's exception, Jefferson Parish functions only in a representative capacity as the governing authority of Road District No. 1. For the purposes of determining whether prescription has run against Road District No. 1 in this case, we will treat Jefferson Parish and Road District No. 1 as the same party, as did the trial court.
[3] This Court has looked to commentary and jurisprudence under Federal Rule of Civil Procedure 15(c), upon which La. C.C. art. 1153 was based, for the proper interpretation of La. C.C. art. 1153. See Giroir, supra; Ray, supra; Allen v. Smith, 390 So.2d 1300 (La. 1980); Tate, Amendment of Pleadings in Louisiana, 43 Tul. L.Rev. 211 (1969).
[4] In analyzing the relationship between the City of Baton Rouge and BREC, we considered the following: The City's governing body and its chief executive appoint seven of the nine members of BREC, indicating an element of control similar to that existing between corporations with interlocking officers and directors; BREC uses many properties owned by the City, and the City, although retaining ownership, cannot sell or alienate as long as the recreational use continues; the city council makes appropriates for BREC's support; BREC uses the accounting services of the City's finance department, as well as the services of the City's engineering, building maintenance, central garage and purchasing divisions; BREC is part of and subject to the personnel system for City employees; BREC prepares and presents a capital budget annually to the City's planning commission, which has the power to approve or disapprove each item; the City's planning commission also must approve BREC's issuance of bonds and certificates of indebtedness, as well as appropriations for purchases of land and construction of buildings. Findley, supra at 1171.